UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
JENNIFER SAUNDERS,

                              Plaintiff,

- against-

NYC DEPARTMENT OF EDUCATION,
RESNICK, Principal, RENAL PITON,
Assistant Principal, MATT GUTTMAN,
Assistant Principal, RANDI WEINGARTEN,
UFT President, PATRICIA CRISPINO, UFT
Chairperson, SANTIAGO TAVERAS, Local
Instructional Superintendent, LORI
MASTRAMAURO, Mentoring Program
Coordinator, ERIC LAWSON, Arbitrator,
JUDY RIVERA, Department of Education
Human Resources Deputy Director, DONNA
DENNIS, Department of Education Human
Resources Assistant, and ESTHER ANTHINEZ,
Department of Education Human Resources
Assistant,

                              Defendants.
------------------------------------------------------X

**OPINION AND ORDER**
**07 CV 2725 (SJF)(LB)**

FEUERSTEIN, J.

On July 3, 2007, *pro se* plaintiff Jennifer Saunders ("plaintiff") filed a complaint against defendant New York City Department of Education ("the DOE"), alleging employment discrimination based upon her age, race and sex, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* By order dated July 14, 2009, I granted the DOE's motion to dismiss the complaint pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and dismissed plaintiff's complaint without prejudice and with leave to amend within thirty (30) days from the date the order was served with notice of entry upon

1

plaintiff. Plaintiff timely filed an amended complaint, in which she, *inter alia*, added defendants Principal Resnick, Renal Piton, Matt Guttman, Santiago Taveras, Lori Mastramauro, Judy Rivera, Donna Dennis and Esther Anthinez (collectively, and together with the DOE, "the DOE defendants"); Randi Weingarten and Patricia Crispino (collectively, "the UFT defendants"); and Eric Lawson ("Lawson")[1]. Lawson now moves pursuant to Rule 12(b)(6) of the Federal Rules of Procedure to dismiss the amended complaint as against him. For the reasons discussed herein, Lawson's motion is granted.

I. BACKGROUND

A. Factual Allegations

Plaintiff is a fifty (50) year old African-American female. (Amended Complaint [Compl.], ¶ 149). At all relevant times, plaintiff was employed by the DOE as a tenured teacher at the Graphic Communication Arts High School ("GCAHS") and as a coordinator in the New York City Mentoring Program ("the Mentoring Program"). (Compl., ¶ 6).

Defendant Jerod Resnick ("Resnick") was, at all relevant times, the principal of GCAHS. (Id.) Plaintiff alleges that Resnick harassed her after she reported alleged "inappropriate sexual behavior" between a teacher and student at GCAHS. (Compl., ¶ 6).

Plaintiff had "difficulty completing the enormous burden of administrative tasks" assigned her, as a result of which Resnick met with her and Assistant Principal Nancy Johnson

---

[1] Although plaintiff also named Lee Murnick in the amended complaint she filed on September 21, 2009, she was subsequently granted leave to withdraw that amended complaint and to substitute another amended complaint which, *inter alia*, omits Murnick, in its stead. Accordingly, Murnick is not a defendant in this action. The Clerk of the Court is directed to correct the docket sheet accordingly.

2

("Johnson") in May 2004. (Compl., ¶¶ 7-11). Plaintiff alleges that during that meeting, Resnick "so assaulted Plaintiff * * * in his office with his body language as to cause sufficient fear in Plaintiff that she abruptly retreated from his office * * *." (Compl., ¶ 7; see also ¶¶ 8, 10, 12).

On June 16, 2004, Resnick again met with plaintiff and Johnson, as well as defendant Lori Mastramauro ("Mastramauro"), the director of the Mentoring Program, to discuss plaintiff's failure to timely submit paperwork required for the Mentoring Program and to appear at the end-of-year meeting for coordinators of the Mentoring Program. (Compl., ¶ 13). Plaintiff alleges that at that meeting, Resnick "ranted and raved at the idea that Mastromauro was bringing [plaintiff] favors [given to all coordinators of the Mentoring Program during the meeting at which plaintiff failed to attend] and a certificate of acknowledgment for [her] service [as a coordinator] * * *." (Compl., ¶¶ 14-15). According to plaintiff, she "endured [Resnick's] tirade as long as humanly reasonable and then retreated from [his] office." (Compl., ¶ 16). Plaintiff alleges that shortly thereafter, Johnson asked her to resign as a coordinator of the Mentoring Program, which she refused to do. (Compl., ¶ 17).

On June 24, 2004, Resnick again summoned plaintiff for a meeting in his office, but she refused to attend the meeting if only Resnick and defendant Patricia Crispino ("Crispino"), chairperson of the United Federation of Teachers ("UFT"), were present unless she could record the meeting because, according to plaintiff, she "had recently rejected the 'quid pro quo' advances of * * * Crispino comprising 'have dinner with me or I will not advocate for your grievances' or words to that effect." (Compl., ¶ 18 n. 1). When Resnick denied plaintiff's request to record the meeting, plaintiff left his office and demanded that Resnick put any further communications to her in writing. (Compl., ¶ 19).

3

Plaintiff alleges that she was subsequently removed from her position as a coordinator in the Mentoring Program and was replaced by the teacher whom she had alleged was engaged in inappropriate relations with a student. (Compl., ¶ 20).

Plaintiff alleges that by letter dated September 3, 2004, she complained about Resnick and the conditions at the GCAHS to defendant Santiago Taveras ("Taveras"), the superintendent. (Compl., ¶ 21).

Plaintiff alleges that on the first day of the 2004-2005 school year, she was advised that her regular teaching position "had been excessed" and that she was reassigned as an "Absent Teacher Reserve" ("ATR"), i.e., the school's in-house substitute teacher, due to a decrease in student enrollment for her licensed area, i.e., the video production department. (Compl., ¶¶ 22, 26-27). According to plaintiff, Liz Torres ("Torres"), a younger teacher who was under the age of forty (40), and who was not African-American, was hired to teach photography classes, which plaintiff had taught for two (2) years. (Compl., ¶¶ 23-24, 26). Plaintiff further alleges that in February 2005, the video production department was re-opened and taught by Torres. (Compl., ¶ 27).

Plaintiff alleges that while employed as an ATR, defendants Matt Guttman, the assistant vice principal for the social studies department, and Renal Piton, the assistant vice principal for the math department, "systematically harassed Plaintiff by excessively walking into classes she covered, peering through windows into the classrooms from the hallway and by appearing in classrooms she was scheduled to cover before she arrived in order to find or fabricate any irregularities that could be used to write letters to be placed in her Teacher's file." (Compl., ¶ 28).

4

Plaintiff alleges that on October 22, 2004, after Taveras spoke with Resnick about plaintiff's September 3, 2004 letter to him, Resnick elbowed plaintiff in her ribs while she was walking in a hallway ("the October incident"). (Compl., ¶ 30).

On January 5, 2005, the DOE declared the GCAHS to be "a failed High School" and mandated that it be under state review. (Compl., ¶ 32). According to plaintiff, during an open faculty meeting, she made a statement regarding the overall operation of the school which "inflamed Principal Resnick and led him to summon Plaintiff to meet with him in his office in a series of letters written to her between January 25-28, 2005." (Compl., ¶ 32). Plaintiff refused to meet with Resnick.

On January 28, 2005, plaintiff filed a police report against Resnick regarding the October incident. (Compl., ¶ 33). According to plaintiff, Resnick filed a counter-police report against her on February 11, 2005. (Compl., ¶ 34).

On March 2, 2005, plaintiff filed a charge of discrimination against the DOE with the New York State Division of Human Rights ("NYSDHR"), alleging discrimination based upon her race, sex and age. (Compl., ¶ 35).

On March 9, 2005, Taveras notified plaintiff that an investigation would be conducted into the October incident. (Compl., ¶ 36). In response, plaintiff e-mailed Taveras to inform him that Crispino was not representing plaintiff's grievances and to request permission to record her meeting with Taveras. (Compl., ¶ 37).

On March 10, 2005, a meeting was held in Resnick's office to investigate the October incident, which plaintiff was denied permission to record. (Compl., ¶¶ 38-39). According to plaintiff, the sole issue raised during the investigation was the timing of the incident, of which

plaintiff indicated that she could not be certain. (Compl., ¶¶ 39-40). Plaintiff alleges that Taveras had a conflict of interest which "prevented him from being able to conduct a fair and thorough investigation of Plaintiff's police report filing against Principal Resnick." (Compl., ¶ 87).

On March 11, 2005, Taveras reported to the director of special investigations that plaintiff was guilty of filing a false police report against Resnick because she alleged that the October incident occurred at 11:30 a.m., a time that plaintiff was in class. (Compl., ¶ 41).

On March 12, 2005, plaintiff was removed from the GCAHS and sent to the DOE's Temporary Reassignment Center ("TRC") to await a hearing on disciplinary charges. (Compl., ¶ 42).

On May 3, 2005, plaintiff complained about the conditions in the TRC and requested a medical accommodation because she was experiencing "severe mental and physical distress" as a result of sitting in a "windowless overcrowded room" for more than four (4) hours each day. (Compl., ¶ 44).

On September 15, 2005, Lawson was appointed as the arbitrator presiding over the disciplinary charges against plaintiff. (Compl., ¶ 50). On December 19, 2005, a pre-hearing conference was held before Lawson, during which plaintiff was represented by UFT attorney Cavallaro. (Compl., ¶ 52). According to plaintiff, at the conference, Cavallaro requested that Lawson perform an in-camera inspection of Resnick's personnel file to find evidence of plaintiff's prior complaints against Resnick, but Lawson left that request in abeyance for over a year. (Compl., ¶¶ 57-58).

On March 27, 2006, plaintiff and eighteen (18) other teachers filed a grievance against the

DOE for the "unhealthy and unsafe conditions at" the TRC ("the health and safety grievance"). (Compl., ¶ 60).

On June 20, 2006, plaintiff applied for an extension of time to complete her final course requirement for a New York State Permanent Teaching Certificate. (Compl., ¶ 61).

According to plaintiff, on August 7, 2006, the New York State Department of Labor Public Employee Safety and Health Bureau ("PESHB") sustained her health and safety grievance following an inspection of the TRC which found overcrowded conditions, a failure to implement an emergency exit plan and a single exit doorway hung in the wrong direction. (Compl., ¶¶ 62-63).

On January 7, 2007, the DOE informed plaintiff that her request for an extension of time to complete her coursework was denied since her license was invalidated when she was excessed from her regular teaching position in March 2005. (Compl., ¶ 66). However, plaintiff was informed by a UFT representative that her license would be restored, without the additional coursework requirement, if plaintiff were completely exonerated of the disciplinary charges against her. (Compl., ¶ 89).

On January 19, 2007, the arbitration commenced on the DOE's disciplinary charges against plaintiff for: (1) having an open newspaper on her desk; (2) singing in an Economic class; (3) allowing students to play cards and listen to music; (4) allowing a student to wear a hat in class; (5) holding what appeared to be a novel during class; (6) excessive absences and latenesses; and (7) filing a false police report against Resnick. (Compl., ¶¶ 54, 67). According to plaintiff, at the commencement of the arbitration, Lawson ruled in favor of Cavallaro's request for an in-camera inspection of Resnick's personnel file. (Compl., ¶¶ 68-69). However,

following objection by the DOE's attorney, Lawson postponed production of Resnick's file pending Taveras's testimony. (Compl., ¶ 70). Following Taveras's testimony, Lawson granted the DOE's request to further defer production of Resnick's file pending Resnick's testimony. (Compl., ¶¶ 71-73).

Plaintiff alleges that on March 21, 2007, Lawson "intentionally prevented relevant exculpatory evidence from being admitted into the record by" adjourning for lunch, following which counsel failed to pursue to same line of questioning. (Compl., ¶¶ 74-78). Plaintiff also alleges that Lawson allowed a certain document to be admitted into evidence without being authenticated, (Compl., ¶ 83), and failed to enter certain other evidence into the record, (Compl., ¶¶ 84-86, 122).

On or about April 1, 2007, the EEOC issued a right to sue letter to plaintiff. (Compl., ¶ 126). Plaintiff filed the initial complaint in this action on July 3, 2007.

On April 16, 2007, plaintiff's health and safety grievance was denied by the DOE. (Compl., ¶ 88). On August 24, 2007, plaintiff was advised by the UFT Grievance Department that her grievance could not be successfully pursued in arbitration. (Compl., ¶ 90). On September 15, 2007, plaintiff appealed the decision not to pursue her grievance to arbitration. (Compl., ¶ 91).

The hearing on the disciplinary charges against plaintiff was concluded on or about September 21, 2007, after thirteen (13) hearing dates. (Compl., ¶ 92). On November 22, 2007, Lawson found plaintiff guilty of two (2) specifications for lateness, one (1) specification for insubordination, three (3) specifications for rendering unsatisfactory lessons and one specification (1) for filing a false report. Lawson determined that the appropriate penalty was a

four (4) month suspension without pay.

Plaintiff alleges that on November 26, 2007, defendant Randi Weingarten ("Weingarten") "'seriously altered Plaintiff's Due Process Rights' in the 2007 UFT Collective Bargaining Agreement * * *." (Compl., ¶ 94).

According to plaintiff, on December 19, 2007, Cavallaro informed her that the DOE would not settle its disciplinary charges against plaintiff because it "wanted blood from Plaintiff because [of] her filing of racial discrimination charges with the [NYSDHR] * * *." (Compl., ¶ 55).

Plaintiff alleges that she was not notified of Lawson's decision and award until January 28, 2008. (Compl., ¶ 95). Plaintiff alleges that Lawson's final opinion was not rendered until sixty (60) days after the final hearing date, instead of the required thirty (30) days, and, thus, he violated her due process rights and the UFT Collective Bargaining Agreement ("CBA"). (Compl., ¶ 121).

Plaintiff alleges that on January 28, 2008, her medical benefits were terminated despite the DOE's legal requirement to maintain a teacher's access to such benefits while temporarily suspended. (Compl., ¶ 96).

On January 30, 2008, the NYSDHR dismissed her discrimination charge based upon a finding of "no probable cause." (Compl., ¶ 97).

On April 30, 2008, plaintiff had an interview with the Daily News regarding teachers placed in the TRC. (Compl., ¶ 100).

On May 29, 2008, plaintiff returned to the TRC. (Compl., ¶ 103).

Plaintiff alleges that on June 15, 2008, she did not receive her regular paycheck and that

defendant Donna Dennis ("Dennis"), a DOE human resources assistant, denied her request for an emergency check after consulting with payroll officer Zeldon. (Compl., ¶¶104-106). However, when plaintiff contacted Zeldon, he informed her that Dennis never contacted him requesting an emergency check; that "it appeared as if Donna Dennis and Esther Anthinez [sic] intentionally waited to submit payroll materials" regarding plaintiff; and that he was suspicious about the accuracy of the timesheets submitted by Dennis and defendant Esther Antinez ("Antinez") and the manner in which they were handling plaintiff's timesheets. (Compl., ¶¶ 109-114).

On July 1, 2008, plaintiff was informed that her employment was terminated. (Compl., ¶ 115). On that same date, plaintiff began organizing a group of colleagues to expose the use of the TRC to destroy teachers' lives. (Compl., ¶ 116).

B. Procedural History

On July 3, 2007, plaintiff filed a complaint against the DOE alleging employment discrimination based upon her age, race, and sex, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* By order dated July 14, 2009, I granted the DOE's motion to dismiss the complaint pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and dismissed plaintiff's complaint without prejudice and with leave to amend within thirty (30) days from the date the order was served with notice of entry upon plaintiff. Plaintiff timely filed an amended complaint, in which she, *inter alia*, added the individual DOE defendants, the UFT defendants and Lawson. In the amended complaint, plaintiff asserts, *inter alia*, the following claims for relief: (1) discrimination, retaliation and a hostile work environment in violation of the Age Discrimination in Employment Act ("ADEA"),

29 U.S.C. § 621, *et seq.*; (2) discrimination based on race and sex, and retaliation, in violation of Title VII; (3) violation of plaintiff's First Amendment rights; (4) violations of the Fair Labor Standard Labor Act ("FLSA"), 29 U.S.C. §§ 158 and 215(a)(3); (5) discrimination based on race, age and sex, and retaliation, in violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 296, *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.*; and (6) violations of plaintiff's constitutional rights under 42 U.S.C. § 1983 and Article 1 of the New York State Constitution.

Lawson now moves pursuant to Rule 12(b)(6) of the Federal Rules of Procedure to dismiss the amended complaint as against him.

## II. ANALYSIS

### A. Standard of Review

A *pro se* plaintiff's submissions are held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'" Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 [1972]). Indeed, a court must construe the submissions of a *pro se* litigant liberally and interpret them "to raise the strongest arguments that they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and citations omitted); see also McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Traguth v. Zuck, 710 F.2d 90, 92 (2d Cir. 1983); see also Caidor v. Onondaga County, 517 F.3d 601, 605 (2d Cir. 2008) (holding that *pro se* litigants generally are required to inform themselves of procedural rules and

to comply with them).

Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

B. Absolute Immunity

Plaintiff's claims for damages against Lawson are barred by the doctrine of absolute immunity, since all of her claims against Lawson are based upon acts undertaken by him "within the scope of the arbitral process." Jacobs v. Mostow, No. 06-4829-cv, 271 Fed. Appx. 85, 88 (2d Cir. Mar. 27, 2008) (quoting Austern v. Chicago Board Options Exchange, Inc., 898 F.2d 882, 886 (2d Cir. 1990)). The Second Circuit has held:

> "Absolute immunity affords 'complete protection from suit,' Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), because it gives 'public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities,' Barr v. Abrams, 810 F.2d 358, 361 (2d Cir.1987), so that they will not feel 'constrained in making every decision by the consequences in terms of [their] own potential liability in a suit for damages,' Imbler v. Pachtman, 424 U.S. 409, 424-25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The doctrine's nature 'is such that it "accords protection from ... any judicial scrutiny of the motive for and reasonableness of official action,"' Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir.2005) (quoting Robinson v. Via, 821 F.2d 913, 918 (2d Cir.1987)), even where the challenged conduct was motivated by a wrongful motive or even malice, Bernard v. County of Suffolk, 356 F.3d 495, 503 (2d Cir.2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985))."

In re NYSE Specialists Securities Litigation, 503 F.3d 89, 95-96 (2d Cir. 2007).

Plaintiff only seeks retroactive relief, i.e., monetary damages and a declaration that

defendants "have violated" plaintiff's statutory and constitutional rights in the past, (Compl., "Wherefore" clause), see, e.g. Rothenberg v. Stone, 234 F.Supp.2d 217, 221-222 (E.D.N.Y. 2002) (dismissing the plaintiff's claims on the basis, *inter alia*, that the plaintiff sought only retrospective declaratory relief, i.e. that the defendant's past conduct violated federal law), and does not allege that Lawson was acting outside of his role as an arbitrator or without jurisdiction when he committed any of the acts or omissions of which she complains. Accordingly, Lawson is entitled to absolute immunity from all of plaintiff's claims asserted against him in the amended complaint. Therefore, the branch of Lawson's motion seeking dismissal of the amended complaint against him on the basis that he is absolutely immune from this suit is granted and the complaint is dismissed in its entirety with prejudice as against Lawson.[2]

C. Claims against the Remaining Defendants

1. Due Process Claims[3]

Plaintiff's amended complaint fails to state a plausible due process claim against any of the named defendants, except, arguably, Dennis, Anthinez and the DOE, because she was

---

[2] Although plaintiff's time within which to oppose Lawson's motion has not yet expired, it is nonetheless proper to dismiss her claims against Lawson since they are barred by the doctrine of absolute immunity. See 28 U.S.C. § 1915(e)(2)(B)(iii) ("[T]he court shall dismiss the case at any time if the court determines that— * * * (B) the action * * * — * * * (iii) seeks monetary relief against a defendant who is immune from such relief.") In light of this determination, it is unnecessary to consider Lawson's remaining contentions.

[3] With the exception of plaintiff's claims that she did not receive her salary for the months of May, June, July and August 2008, (Compl., ¶¶104-114, 158), all of plaintiff's due process claims involve conduct relating to the disciplinary charges brought against her and the subsequent arbitration proceeding and award rendered against her. (See Compl., ¶¶ 147, 154-173). Plaintiff's allegations regarding the failure to pay her from May to August 2008 only assert conduct on the part of Dennis and Anthinez. (Compl., ¶¶ 104-114).

13

afforded the "full-blown adversarial hearing" required by New York Education Law § 3020-a on the disciplinary charges against her, and she does not allege that she "utilize[d] the process afforded [her] by state law to appeal the arbitrator's decision," or was prevented from doing so by the acts or omissions of others. Jacobs, 271 Fed. Appx. at 89 (citations omitted); see also Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001) (holding that the plaintiffs failed to state a due process claim in light of the availability of subsequent Article 78 review of their claims in state court). Since, plaintiff received all of the process due her, i.e., notice and an opportunity to be heard on all of the disciplinary charges against her, and was able to challenge the arbitrator's award in state court, she cannot state a due process claim as a matter of law. See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 545-48, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Sindone v. Kelly, No. 06-3230-cv, 254 Fed.Appx. 58, 59 (2d Cir. Nov. 15, 2007); Strong v. Board of Education of Uniondale Union Free School District, 902 F.2d 208, 212 (2d Cir. 1990); see also Hudson v. Palmer, 468 U.S. 517, 531-533, 104 S.Ct. 3194, 92 L.Ed.2d 393 (1984) (holding that there is no due process violation when the state provides an adequate post-deprivation remedy).[4] Accordingly, with the exception of plaintiff's claim that she was not paid for the period between May through August 2008, plaintiff's due process claims are *sua sponte* dismissed in their entirety with prejudice as frivolous.[5]

---

[4] To the extent plaintiff alleges that the arbitral proceedings took too long, the allegations set forth in the amended complaint regarding those proceedings do not rise to the level of a constitutional deprivation as a matter of law. See Loudermill, 470 U.S. at 548.

[5] I make no determination on the merits of plaintiff's remaining due process claim at this time and the remaining defendants may move to dismiss this claim on any alternative ground at any later stage in this proceeding.

## 2. Title VII and ADEA Claims against the Individual Defendants

Plaintiff's Title VII and ADEA claims (second and first claims for relief, respectively) against the individual DOE defendants and the UFT defendants are *sua sponte* dismissed as frivolous, since, *inter alia*, individuals are not subject to liability under those statutes and any "official capacity" claim would be redundant to plaintiff's claims against the DOE. See, e.g. Sassaman v. Gamache, 566 F.3d 307, 315-316 (2d Cir. 2009); Fox v. State University of New York, 497 F.Supp.2d 446, 451 (E.D.N.Y. 2007); Cherry v. Toussaint, No. 02-7322, 50 Fed. Appx. 476, 81, (2d Cir. Nov. 1, 2002).[6]

## 3. Section 1983 Claims

Plaintiff's claims alleging violations of her First Amendment rights (third and eighth claim for relief) and due process rights (eighth and arguably fifth claim for relief) must be construed as being brought pursuant to 42 U.S.C. § 1983, see, e.g. Buntin v. City of New York, 395 F.Supp.2d 104, 107-108 (S.D.N.Y. 2005), aff'd, 225 Fed.Appx. 28 (2d Cir. 2007), since Section 1983 is the mechanism by which individuals may seek redress for alleged violations of constitutional rights, see Gonzaga University v. Doe, 536 U.S. 273, 285, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).

To state a claim under Section 1983, a complaint must contain factual allegations plausibly suggesting (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity

---

[6] The only defendant against whom plaintiff may maintain her Title VII and ADEA claims (first and second claims for relief, respectively) at this stage is her employer, the DOE. I make no determination about the merits of those claims at this juncture and the DOE may otherwise move to dismiss those claims if and when appropriate.

15

secured by the Constitution or laws of the United States. Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005). "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004)(internal quotations and citation omitted); see Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (affirming the dismissal of the plaintiff's Section 1983 claim against defendant Coughlin on the basis that the plaintiff failed to allege his personal involvement in any alleged constitutional deprivation). A complaint based on a violation under Section 1983 that does not allege the personal involvement of a defendant fails a matter of law. See Rosa R. v. Connelly, 889 F.2d 435, 437 (2d Cir. 1989); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987); see also Johnson v. Barney, No. 07-5597-pr, 2010 WL 93110, at *1 (2d Cir. Jan. 12, 2010) (finding that the plaintiff's claims against the Superintendent failed as a matter of law because the plaintiff failed to allege sufficient personal involvement on the Superintendent's part).

Since plaintiff does not plead any factual allegations plausibly suggesting that defendant Judy Rivera ("Rivera") was personally involved in any of the constitutional violations alleged in the amended complaint, the amended complaint fails to a Section 1983 cause of action against Rivera. Accordingly, plaintiff's Section 1983 and constitutional claims against Rivera (third, fifth and eighth claims for relief) are *sua sponte* dismissed as frivolous.

Likewise, plaintiff's only allegations against Mastramauro are that she attended a meeting in Resnick's office on June 16, 2004, at which Mastramauro offered plaintiff a gift bag and certificate of acknowledgment of service that had been given to all of the other coordinators in the Mentoring Program at the end-of-year meeting which plaintiff failed to attend. (Compl., ¶¶ 13-15). Since

16

Mastramauro's conduct did not deprive plaintiff of any constitutional right, plaintiff's Section 1983 and constitutional claims against Mastramauro (third, fifth and eighth claims for relief) are *sua sponte* dismissed as frivolous.

### 4. NYSHRL and NYCHRL Claims

The NYSHRL makes it unlawful for an employer to discriminate on the basis of, *inter alia*, race, age or sex. See N.Y. Exec. Law § 296 ("Section 296"). An individual may be liable under the NYSHRL only if her or she is an employer under subsection (1) of Section 296, or if he she was an "aider or abettor" under subsection (6) of Section 296. See Lopes v. Caffe Centrale LLC, 548 F.Supp.2d 47, 54 (S.D.N.Y. 2008); Prince v. Madison Square Garden, 427 F.Supp.2d 372, 384 (S.D.N.Y. 2006). Clearly, none of the individual DOE defendants or UFT defendants had any ownership interest in the DOE, plaintiff's employer, or the power to make personnel decisions on their own. See Stevens v. New York, ___ F.Supp.2d ___, 2009 WL 4277234, at * 7 (S.D.N.Y. Nov. 23, 2009); Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984). Accordingly, none of the individual DOE defendants or UFT defendants were "employers" within the meaning of Section 296(1).

Section 296(6) provides that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). The Second Circuit has held that individual liability may be imposed under the NYSHRL on a co-worker who "actually participates in the conduct giving rise to a discrimination claim," irrespective of whether that co-worker possessed the authority to do more than carry out personnel decisions made by others. Feingold v. New York, 366 F.3d 138, 157-158 (2d Cir.

17

2004) (internal quotations and citation omitted). Since plaintiff does not allege that Rivera, Mastramauro or the UFT defendants actually participated in any of the alleged discriminatory or retaliatory conduct alleged in her amended complaint, she fails to state a NYSHRL claim against those defendants. Accordingly, plaintiff's NYSHRL claim (sixth claim for relief) is *sua sponte* dismissed against Rivera, Mastramauro and the UFT defendants as frivolous.

Since the same standards of analysis are used to evaluate aiding and abetting claims under both the NYSHRL and the NYCHRL, see Feingold, 366 F.3d at 158-159; Stevens, 2009 WL 4277234, at * 7, plaintiff's NYCHRL claim (seventh claim for relief) is likewise *sua sponte* dismissed against Rivera, Mastramauro and the UFT defendants as frivolous.

5.  Fair Labor Standard Act Claim

Plaintiff alleges that the DOE violated the FLSA, 29 U.S.C. §§ 158 and 215(a)(3), by "report[ing] to the Department of Labor that Plaintiff had been behavior [sic] that rose to the level of misconduct and had Plaintiff's Unemployment benefits redetermined so that Plaintiff was denied Unemployment benefits." (Compl., ¶ 142; see also ¶¶ 98-102). Since plaintiff does not allege that any of the individual defendants participated in this conduct, she fails to state a viable FLSA claim against any of those defendants. Accordingly, plaintiff's FLSA claim (fourth claim for relief) is dismissed *sua sponte* as against all defendants except the DOE.[7]

III. Conclusion

---

[7] Accordingly, the amended complaint is dismissed in its entirety as against Rivera and Mastramauro.

For the reasons stated herein, the branch of Lawson's motion seeking to dismiss the amended complaint against him as barred by the doctrine of absolute immunity is granted and the amended complaint is dismissed in its entirety, with prejudice, as against Lawson. In addition, the following claims are dismissed *sua sponte* as frivolous: (1) plaintiff's due process claims (fifth and eighth claims for relief) against all defendants, except Dennis, Anthinez and the DOE based upon the failure to pay plaintiff from May through August 2008; (2) plaintiff's ADEA, Title VII and FLSA claims (first, second and fourth claims for relief, respectively) against all defendants except the DOE; (3) plaintiff's NYSHRL and NYCHRL claims (sixth and seventh claims for relief) against the UFT defendants; and (4) all claims against Rivera and Mastramauro, and the amended complaint is dismissed in its entirety as against those defendants.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: January 19, 2010
Central Islip, N.Y.