UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JENNIFER SAUNDERS,

                              **OPINION AND ORDER**

          Plaintiff,                  **07 CV 2725 (SJF)(LB)**

        - against-

NYC DEPARTMENT OF EDUCATION,
RESNICK, Principal, RENAL PITON,
Assistant Principal, MATT GUTTMAN,
Assistant Principal, SANTIAGO TAVERAS,
Local Instructional Superintendent, DONNA
DENNIS, Department of Education Human
Resources Assistant, and ESTHER ANTHINEZ,
Department of Education Human Resources
Assistant,

                    Defendants.
-------------------------------------------------------X
FEUERSTEIN, J.

      On July 3, 2007, plaintiff Jennifer Saunders ("plaintiff") filed a *pro se* complaint against

defendant New York City Department of Education ("the DOE"), alleging employment

discrimination based upon her age, race and sex, and retaliation, in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* By order dated July 14, 2009, I granted

the DOE's motion to dismiss the complaint pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal

Rules of Civil Procedure and dismissed plaintiff's complaint without prejudice and with leave to

amend the complaint. Plaintiff timely filed an amended *pro se* complaint, in which she, *inter*

*alia*, added defendants Principal Resnick, Renal Piton, Matt Guttman, Santiago Taveras, Lori

Mastramauro, Judy Rivera, Donna Dennis and Esther Anthinez (collectively, and together with

the DOE, "the DOE defendants"); Randi Weingarten and Patricia Crispino (collectively, "the

UFT defendants"); and Eric Lawson ("Lawson")[1].  By order dated January 19, 2010, I: (1) granted the branch of Lawson's motion seeking dismissal of the amended complaint as against him and dismissed the amended complaint as against Lawson with prejudice as barred by the doctrine of absolute immunity; and (2) *sua sponte* dismissed (a) all claims against Rivera and Mastramauro and (b) certain of plaintiff's other claims against the remaining defendants. Plaintiff subsequently retained counsel to represent her in this action and voluntarily withdrew her remaining claims against the UFT defendants.  The DOE defendants now move pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Procedure to dismiss the amended complaint as against them for lack of subject matter jurisdiction and failure to state a claim, respectively, and plaintiff cross-moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment.  For the reasons discussed herein, the DOE defendants' motion is granted in part and denied in part and plaintiff's cross motion is denied.

I.      BACKGROUND

A.      Factual Allegations

Plaintiff is a fifty (50) year old African-American female.  (Amended Complaint [Compl.], ¶ 149).  At all relevant times, plaintiff was employed by the DOE as a tenured teacher at the Graphic Communication Arts High School ("GCAHS") and as a coordinator in the New York City Mentoring Program ("the Mentoring Program").  (Compl., ¶ 6).

Defendant Jerod Resnick ("Resnick") was, at all relevant times, the principal of GCAHS.

---

[1]  Although plaintiff also named Lee Murnick in the amended complaint she filed on September 21, 2009, she was subsequently granted leave to withdraw that amended complaint and to substitute another amended complaint which, *inter alia*, omits Murnick, in its stead.

(Id.)  Plaintiff alleges that Resnick harassed her after she reported alleged "inappropriate sexual behavior" between a teacher and student at GCAHS.  (Compl., ¶ 6).

Plaintiff had "difficulty completing the enormous burden of administrative tasks" assigned her, as a result of which Resnick met with her and Assistant Principal Nancy Johnson ("Johnson") in May 2004.  (Compl., ¶¶ 7-11).  Plaintiff alleges that during that meeting, Resnick "so assaulted Plaintiff * * * in his office with his body language as to cause sufficient fear in Plaintiff that she abruptly retreated from his office * * *."  (Compl., ¶ 7; see also ¶¶ 8, 10, 12).

On June 16, 2004, Resnick again met with plaintiff and Johnson, as well as with Lori Mastramauro ("Mastramauro"), the director of the Mentoring Program, to discuss plaintiff's failure to timely submit paperwork required for the Mentoring Program and to appear at the end-of-year meeting for coordinators of the Mentoring Program.  (Compl., ¶ 13).  Plaintiff alleges that at that meeting, Resnick "ranted and raved at the idea that Mastramauro was bringing [plaintiff] favors [given to all coordinators of the Mentoring Program during the meeting at which plaintiff failed to attend] and a certificate of acknowledgment for [her] service [as a coordinator] * * *."  (Compl., ¶¶ 14-15).  According to plaintiff, she "endured [Resnick's] tirade as long as humanly reasonable and then retreated from [his] office."  (Compl., ¶ 16).  Plaintiff alleges that shortly thereafter, Johnson asked her to resign as a coordinator of the Mentoring Program, which she refused to do.  (Compl., ¶ 17).

On June 24, 2004, Resnick again summoned plaintiff for a meeting in his office, but she refused to attend the meeting if only Resnick and Patricia Crispino ("Crispino"), chairperson of the United Federation of Teachers ("UFT"), were present unless she could record the meeting. (Compl., ¶ 18 n. 1).  When Resnick denied plaintiff's request to record the meeting, plaintiff left

his office and demanded that Resnick put any further communications to her in writing. (Compl., ¶ 19).

Plaintiff alleges that she was subsequently removed from her position as a coordinator in the Mentoring Program and was replaced by the teacher whom she had alleged was engaged in inappropriate relations with a student. (Compl., ¶ 20).

Plaintiff alleges that by letter dated September 3, 2004, she complained about Resnick and the conditions at the GCAHS to defendant Santiago Taveras ("Taveras"), the superintendent. (Compl., ¶ 21).

Plaintiff alleges that on the first day of the 2004-2005 school year, she was advised that her regular teaching position "had been excessed" and that she was reassigned as an "Absent Teacher Reserve" ("ATR"), i.e., the school's in-house substitute teacher, due to a decrease in student enrollment for her licensed area, i.e., the video production department. (Compl., ¶¶ 22, 26-27). According to plaintiff, Liz Torres ("Torres"), a younger teacher who was under the age of forty (40), and who was not African-American, was hired to teach photography classes, which plaintiff had taught for two (2) years. (Compl., ¶¶ 23-24, 26). Plaintiff further alleges that in February 2005, the video production department was re-opened and taught by Torres. (Compl., ¶ 27).

Plaintiff alleges that while employed as an ATR, defendants Matt Guttman, the assistant vice principal for the social studies department, and Renal Piton, the assistant vice principal for the math department, "systematically harassed Plaintiff by excessively walking into classes she covered, peering through windows into the classrooms from the hallway and by appearing in classrooms she was scheduled to cover before she arrived in order to find or fabricate any

irregularities that could be used to write letters to be placed in her Teacher's file." (Compl., ¶ 28).

Plaintiff alleges that on October 22, 2004, after Taveras spoke with Resnick about plaintiff's September 3, 2004 letter to him, Resnick elbowed plaintiff in her ribs while she was walking in a hallway ("the October incident"). (Compl., ¶ 30).

On January 5, 2005, the DOE declared the GCAHS to be "a failed High School" and mandated that it be under state review. (Compl., ¶ 32). According to plaintiff, during an open faculty meeting, she made a statement regarding the overall operation of the school which "inflamed Principal Resnick and led him to summon Plaintiff to meet with him in his office in a series of letters written to her between January 25-28, 2005." (Compl., ¶ 32). Plaintiff refused to meet with Resnick.

On January 28, 2005, plaintiff filed a police report against Resnick regarding the October incident. (Compl., ¶ 33). According to plaintiff, Resnick filed a counter-police report against her on February 11, 2005. (Compl., ¶ 34).

On March 2, 2005, plaintiff filed a charge of discrimination against the DOE with the New York State Division of Human Rights ("NYSDHR"), alleging discrimination based upon her race, sex and age in relation to an unsatisfactory performance rating she received on June 23, 2004, the reassignment of her after-school program to a Caucasian teacher, her "demotion" to substitute teacher, the excessing of her regular teaching position and the subsequent assignment of that position, upon re-opening, to a "non-Black" teacher. (Compl., ¶ 35; Declaration of Daniel Chiu [Chiu Decl.], Ex. A).

On March 9, 2005, Taveras notified plaintiff that an investigation would be conducted

into the October incident. (Compl., ¶ 36). In response, plaintiff e-mailed Taveras, *inter alia*, to request permission to record her meeting with Taveras. (Compl., ¶ 37).

On March 10, 2005, a meeting was held in Resnick's office to investigate the October incident, which plaintiff was denied permission to record. (Compl., ¶¶ 38-39). According to plaintiff, the sole issue raised during the investigation was the timing of the incident, of which plaintiff indicated that she could not be certain. (Compl., ¶¶ 39-40). Plaintiff alleges that Taveras had a conflict of interest which "prevented him from being able to conduct a fair and thorough investigation of Plaintiff's police report filing against Principal Resnick." (Compl., ¶ 87).

On March 11, 2005, Taveras reported to the director of special investigations that plaintiff was guilty of filing a false police report against Resnick because she alleged that the October incident occurred at 11:30 a.m., a time that plaintiff was in class. (Compl., ¶ 41).

On March 12, 2005, plaintiff was removed from the GCAHS and sent to the DOE's Temporary Reassignment Center ("TRC" or "rubber room") to await a hearing on disciplinary charges. (Compl., ¶ 42).

On or about March 16, 2005, plaintiff filed a charge of discrimination and retaliation against the DOE with the NYSDHR relating to Taveras's investigation of the October incident and finding that she was guilty of filing a false police report against Resnick. (Chiu Decl., Ex. B).

On May 3, 2005, plaintiff complained about the conditions in the TRC and requested a medical accommodation because she was experiencing "severe mental and physical distress" as a result of sitting in a "windowless overcrowded room" for more than four (4) hours each day.

(Compl., ¶ 44).

On September 15, 2005, Lawson was appointed as the hearing officer presiding over the hearing on the disciplinary charges against plaintiff pursuant to New York Education Law § 3020-a ("the 3020-a hearing"). (Compl., ¶ 50).

On March 27, 2006, plaintiff and eighteen (18) other teachers filed a grievance against the DOE for the "unhealthy and unsafe conditions at" the TRC ("the health and safety grievance"). (Compl., ¶ 60).

On June 20, 2006, plaintiff applied for an extension of time to complete her final course requirement for a New York State Permanent Teaching Certificate. (Compl., ¶ 61).

According to plaintiff, on August 7, 2006, the New York State Department of Labor Public Employee Safety and Health Bureau ("PESHB") sustained her health and safety grievance following an inspection of the TRC which found overcrowded conditions, a failure to implement an emergency exit plan and a single exit doorway hung in the wrong direction. (Compl., ¶¶ 62-63).

On January 7, 2007, the DOE informed plaintiff that her request for an extension of time to complete her coursework was denied since her license was invalidated once she had been excessed from her regular teaching position in March 2005. (Compl., ¶ 66).

On January 19, 2007, the 3020-a hearing commenced on the DOE's disciplinary charges against plaintiff for, *inter alia*: (1) having an open newspaper on her desk; (2) singing in an Economic class; (3) allowing students to play cards and listen to music; (4) allowing a student to wear a hat in class; (5) holding what appeared to be a novel during class; (6) excessive absences and latenesses; and (7) filing a false police report against Resnick. (Compl., ¶¶ 54, 67).

By orders dated January 30, 2007, the NYSDHR found no probable cause for plaintiff's March 2, 2005 and March 16, 2005 charges of discrimination and retaliation. (Chiu Decl., Exs. D and E).

On or about April 1, 2007, the EEOC issued a right to sue letter to plaintiff. (Compl., ¶ 126).

On April 16, 2007, plaintiff's health and safety grievance was denied by the DOE. (Compl., ¶ 88).

The 3020-a hearing on the disciplinary charges against plaintiff was concluded on or about September 21, 2007. (Compl., ¶ 92). On November 22, 2007, Lawson issued an opinion and decision finding, *inter alia*, plaintiff guilty of two (2) specifications for latenesses, one (1) specification for insubordination, three (3) specifications for rendering unsatisfactory lessons and one specification (1) for filing a false report, and recommending a penalty of a four (4) month suspension without pay.

Plaintiff alleges that on January 28, 2008, her medical benefits were terminated despite the DOE's legal requirement to maintain a teacher's access to such benefits while temporarily suspended. (Compl., ¶ 96).

On or about February 1, 2008, plaintiff sought a temporary stay of her four (4) month suspension in the New York State Supreme Court, County of New York ("the state court"). Saunders v. City of New York, Department of Education, no. 08/400258 (N.Y. Sup. Ct.) (See Chiu Decl., Ex. F).

On or about March 27, 2008, plaintiff commenced a proceeding in the state court against the DOE, Resnick, Crispino, Guttman and Piton, pursuant to New York Civil Procedure Law and

Rules §§ 7511 and 7803(4), seeking vacatur of Lawson's decision and a preliminary injunction enjoining her four (4) month suspension, restoring her teaching duties, directing payment to her of salary and benefits previously withheld from her, and refunding her payment of a previously imposed monetary penalty ("the state court proceeding"). Id. (See Chiu Decl., Ex. G).

By order dated April 10, 2008, the state court (Abdus-Salaam, J.) denied plaintiff's petition and dismissed the state court proceeding as barred by the statute of limitations. (Chiu Decl., Ex. H). However, by order dated July 28, 2008, the state court (Abdus-Salaam, J.) granted plaintiff's motion for reconsideration, denied the petition on the merits and dismissed the state court proceeding with prejudice. (Chiu Decl., Ex. J).

On April 30, 2008, plaintiff had an interview with the Daily News regarding teachers placed in the TRC or "rubber room." (Compl., ¶ 100).

On May 29, 2008, plaintiff returned to the TRC following her suspension. (Compl., ¶ 103).

Plaintiff alleges that on June 15, 2008, she did not receive her regular paycheck and that defendant Donna Dennis ("Dennis"), a DOE human resources assistant, denied her request for an emergency check after consulting with payroll officer "Zeldon." (Compl., ¶¶104-106). According to plaintiff, when she contacted Zeldon, he informed her that Dennis never contacted him requesting an emergency check; that "it appeared as if Donna Dennis and Esther Anthinez [sic] intentionally waited to submit payroll materials" regarding plaintiff; and that he was suspicious about the accuracy of the timesheets submitted by Dennis and defendant Esther Antinez ("Antinez") and the manner in which they were handling plaintiff's timesheets. (Compl., ¶¶ 109-114).

On July 1, 2008, plaintiff was informed that her employment was terminated. (Compl., ¶ 115). On that same date, plaintiff began organizing a group of colleagues to expose the use of the TRC to destroy teachers' lives. (Compl., ¶ 116).

B.    Procedural History

On July 3, 2007, plaintiff filed a complaint against the DOE alleging employment discrimination based upon her age, race, and sex, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* By order dated July 14, 2009, I granted the DOE's motion to dismiss the complaint pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and dismissed plaintiff's complaint without prejudice and with leave to amend. Plaintiff timely filed an amended complaint, in which she, *inter alia*, added the individual DOE defendants, the UFT defendants and Lawson. In the amended complaint, plaintiff asserts, *inter alia*, the following claims for relief: (1) discrimination, retaliation and a hostile work environment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, (first claim for relief); (2) discrimination based on race and sex, and retaliation, in violation of Title VII (second claim for relief); (3) violations of plaintiff's First Amendment rights (third and eighth claims for relief); (4) violations of the Fair Labor Standard Labor Act ("FLSA"), 29 U.S.C. § 215(a)(3), and Section 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158, (fourth claim for relief); (5) discrimination based on race, age and sex, and retaliation, in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.*, (sixth and seventh claims for relief, respectively); and (6)

violations of plaintiff's Fourteenth Amendment equal protection and due process rights and First Amendment freedom of speech rights under 42 U.S.C. § 1983 (eighth claim for relief).

By order dated January 19, 2010, I: (1) granted the branch of Lawson's motion seeking dismissal of the amended complaint as against him and dismissed the amended complaint with prejudice as against him as barred by the doctrine of absolute immunity: (2) *sua sponte* dismissed the amended complaint as against Rivera and Mastramauro; and (3) *sua sponte* dismissed plaintiff's (a) due process claims (fifth and eighth claims for relief) as against all defendants except Dennis, Antinez and the DOE based upon the failure to pay plaintiff from May through August 2008, (b) ADEA, Title VII, FLSA and NLRA claims (first, second and fourth claims for relief, respectively) against all defendants except the DOE, and (c) NYSHRL and NYCHRL claims (sixth and seventh claims for relief) against the UFT defendants. Plaintiff subsequently withdrew the amended complaint in its entirety as against the UFT defendants. Thus, the following claims remain in this action: (1) the ADEA, Title VII, FLSA and NLRA claims against the DOE (first, second and fourth claims for relief); (2) the due process claims under Section 1983 (fifth and eighth claims for relief) as against Dennis, Antinez and the DOE based upon the failure to pay plaintiff from May through August 2008; (3) the First Amendment retaliation and equal protection claims pursuant to Section 1983 (third and eighth claims for relief) as against the DOE defendants; and (4) the NYSHRL and NYCHRL claims (sixth and seventh claims for relief) as against the DOE defendants.

The DOE defendants now move pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Procedure to dismiss the amended complaint as against them and plaintiff cross-moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment.

II.     ANALYSIS

    A.     12(b)(1)

        1.     Standard of Review

Federal courts are courts of limited jurisdiction, see Exxon Mobil Corp. v. Allapattah

Services, Inc., 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005); Frontera Resources

Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 397 (2d Cir. 2009), and

may not preside over cases absent subject matter jurisdiction.  See Exxon Mobil, 545 U.S. at 552,

125 S.Ct. 2611 (holding that federal courts may not exercise jurisdiction absent a statutory basis);

County of Nassau, N.Y. v. Hotels.com, LP, 577 F.3d 89, 91 (2d Cir. 2009) (holding that federal

courts lack power to disregard the limits on their jurisdiction imposed by the Constitution or

Congress).  Lack of subject matter jurisdiction cannot be waived and may be raised at any time by

a party or by the court *sua sponte*.  Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d

Cir. 2003); Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000); see

also Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General

Committee of Adjustment, Cent. Region, 130 S.Ct. 584, 596 (2009) ("[s]ubject-matter

jurisdiction, * * * refers to a tribunal's power to hear a case, a matter that can never be forfeited

or waived." (internal quotations and citations omitted)).  If a court lacks subject matter

jurisdiction, it must dismiss the action.  Fed. R. Civ. P. 12(h)(3); Arbaugh v. Y & H Corp., 546

U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Durant, Nichols, Houston, Hodgson &

Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-3 (2d Cir. 2009).

"In determining whether the federal courts have subject matter jurisdiction over a cause of

action, a district court must look to the way the complaint is drawn to see if it claims a right to

recover under the laws of the United States." IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1055 (2d Cir.1993) (quoting Goldman v. Gallant Securities, Inc., 878 F.2d 71, 73 [2d Cir.1989]). Although when deciding a jurisdictional motion, the court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, Natural Resources Defense Council v. Johnson., 461 F.3d 164, 171 (2d Cir. 2006), it also may look beyond the allegations of the complaint and "examine evidence outside of the pleadings." Hamm v. U.S., 483 F.3d 135, 137 (2d Cir. 2007). The plaintiff has the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. Id.


        2.       Title VII and ADEA Claims

Exhaustion of administrative remedies and the timely filing of a complaint with the EEOC are preconditions to filing Title VII and ADEA claims in federal court. See Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003); Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). "Administrative exhaustion is an essential element of Title VII's statutory scheme, the purpose of which is to avoid unnecessary judicial action by the federal courts by giving the administrative agency the opportunity to investigate, mediate, and take remedial action." Canty v. Wackenhut Corrections Corp., 255 F.Supp.2d 113, 116 (E.D.N.Y. 2003)(internal quotations and citation omitted); see also Bey v. Welsbach Elec. Corp., No. 01 Civ. 2667, 2001 WL 863419, at * 2 (S.D.N.Y. Jul. 30, 2001), aff'd, 38 Fed. Appx. 690 (2d Cir. 2002) (accord). Nonetheless, exhaustion is an affirmative defense, not a jurisdictional bar to suit. See Boos v. Runyon, 201 F.3d 178, 182 (2d Cir. 2000); Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000); Downey v. Runyon, 160 F.3d 139, 146 (2d Cir. 1998). Accordingly, the branch of the DOE defendants' motion seeking dismissal of plaintiff's Title VII and ADEA

claims for failure to exhaust administrative remedies pursuant to Rule 12(b)(1) is denied.

3.      NLRA Claim[2]

In her fourth cause of action, plaintiff alleges that the DOE violated 29 U.S.C. §§ 158 and

215(a)(3) by reporting to the Department of Labor that she had been terminated for committing

misconduct, as a result of which she was denied unemployment benefits.  (Compl., ¶¶ 142-144).

Section 8 of the NLRA, codified at 29 U.S.C. § 158, regulates "unfair labor practices."

See Building Trades Employers' Educational Association v. McGowan, 311 F.3d 501, 508 (2d

Cir. 2002).  The National Labor Relations Board ("NLRB") "is vested with primary jurisdiction

to determine what is or is not an unfair labor practice."  Kaiser Steel Corp. v. Mullins, 455 U.S.

72, 83, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982); see also  McGowan, 311 F.3d at 508 (holding that

the NLRB has "primary jurisdiction to decide what conduct is protected or prohibited in labor-

management relations under the NLRA.")  Generally, "federal courts do not have jurisdiction

over activity which 'is arguably subject to * * * § 8 of the NLRA,' and they 'must defer to the

exclusive competence of the [NLRB].'" Kaiser Steel, 455 U.S. at 83, 102 S.Ct. 851 (quoting San

Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245, 79

S.Ct. 773, 3 L.Ed.2d 775 (1959)); see also Commer v. American Federation of State, County and

Municipal Employees, 272 F.Supp.2d 332, 339 (S.D.N.Y. 2003), aff'd, 390 F.3d 203 (2d Cir.

---

[2]  Although plaintiff now belatedly seeks to withdraw her fourth claim for relief (under the NLRA
and FLSA), the DOE defendants have already served a dispositive motion and have not stipulated
to the withdrawal.  See Fed. R. Civ. P. 41(a)(1).  Since plaintiff waited until after the DOE
defendants' moved for dismissal of this claim on the merits, and practically to the eve of trial, I
decline to dismiss this claim without prejudice pursuant to Rule 41(a) and, instead, have
addressed this issue on the merits.

2004) ("The NLRA preempts state and federal court jurisdiction of conduct which is arguably prohibited under * * * § 8 of the NLRA."); Nicholls v. Brookdale University Hospital Medical Center, No. 03-CV-6233, 2004 WL 1533831, at * 9 (E.D.N.Y. July 9, 2004) (accord).

Since "Congress has entrusted enforcement of the NLRA to the [NLRB]," Commer, 272 F.Supp.2d at 339, this Court lacks subject matter jurisdiction over plaintiff's NLRA claim. See, e.g. id.; Nicholls, 2004 WL 1533831, at * 9. Accordingly, so much of plaintiff's fourth claim for relief as asserts a violation of 29 U.S.C. § 158 is dismissed with prejudice for lack of subject matter jurisdiction.[3]

### 4.     NYSHRL and NYCHRL Claims

New York Executive Law § 297(9)[4] provides, in pertinent part, that with exceptions not relevant here, "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, * * *, and such other remedies as may be appropriate, * * *, *unless* such person had filed a complaint hereunder or with any local commission on human rights, * * *." (Emphasis added). "The NYCHRL 'language . . . is nearly identical . . . and discussion of the latter applies equally to the former.'" Jackson v. NYS Department of Labor, ___ F.Supp.2d ___, 2010 WL 1778769, at * 4 (S.D.N.Y. Apr. 26, 2010) (quoting York v. Association of the Bar of the City of New York, 286 F.3d 122, 127 (2d Cir. 2002)) (omissions in original); see N.Y.C. Admin. Code § 8-502(a); Wiercinski v. Mangia 57, Inc., No. 09-cv-4413, 2010 WL 2681168, at * 3 (E.D.N.Y. July 2, 2010) (holding that

---

[3]  In light of this determination, it is unnecessary to consider the DOE defendants' contention that the DOE is not an "employer" within the meaning of the NLRA, 29 U.S.C. § 152(2).

[4]  As effective July 18, 2000 to July 5, 2009.

the election of remedies doctrine applies to both state claims under the NYSHRL and city claims under the NYCHRL).

Under the "election of remedies" doctrine, "a person claiming to be aggrieved by an unlawful discriminatory practice may elect to seek redress in either an administrative or judicial forum where different rights and remedies may be pursued." Wiercinski, 2010 WL 2681168, at * 2 (quoting Universal Packaging Corp. v. N.Y. State Div. of Human Rights, 240 A.D.2d 586, 704 N.Y.S.2d 332, 333 (3d Dept. 2000)). The remedies are mutually exclusive and, generally, once a complainant elects to pursue his or her grievances in the administrative forum, i.e., by filing a complaint with the NYSDHR, a subsequent judicial action alleging the same claims is barred by the election of remedies doctrine. See Wiercinski, 2010 WL 2681168, at * 2; Jackson, 2010 WL 1778769, at * 4. The election of remedies doctrine "applies even when the complainant is uncounseled and ignorant of the effects of the election of an administrative forum." Wiercinski, 2010 WL 2681168, at * 2.

Moreover, the doctrine "is not limited to the precise claims brought in the administrative proceeding, but extends to all claims arising out of the same events." Wiercinski, 2010 WL 2681168, at * 2. "If substantially the same facts are involved, then the doctrine of election of remedies will bar any subsequent court proceedings. The facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine of election of remedies." Id. (quoting Benjamin v. N.Y. City Dep't of Health, 17 Misc.3d 1122(A), 851 N.Y.S.2d 68 (Table) (N.Y. Sup. Oct. 23, 2007), aff'd, 57 A.D.3d 403, 870 N.Y.S.2d 290 (1st Dept. 2008)); see also Borum v. Village of Hempstead, 590 F.Supp.2d 376, 383 (E.D.N.Y. 2008) (holding that the election of remedies doctrine is not

avoided by changing the legal theory of the relief sought and that a litigant may not pursue some claims in court and others in the administrative forum if they all arise out of the same course of conduct). Moreover, the election of remedies doctrine is equally as applicable to federal courts as it is to state courts. See Wiercinski, 2010 WL 2681168, at * 3; Borum, 590 F.Supp.2d at 382-3.

Plaintiff pursued the following discrimination and retaliation claims before the NYSDHR: that she received an unsatisfactory performance rating on June 23, 2004; that her position as a coordinator in the Mentoring Program was reassigned to a Caucasian teacher; that she was "demoted" to a substitute teacher position; that her regular teaching position was "excessed" and subsequently re-opened and assigned to a "non-Black" teacher; that the investigation into the October incident was inadequate and/or improper; and that she was found guilty of filing a false police report based upon that faulty investigation. Since the NYSDHR investigated and ruled on the merits of plaintiff's complaints in that forum, the election of remedies doctrine precludes plaintiff from pursuing her NYSHRL and NYCHRL claims arising from those same allegations in this Court. See, e.g. Jackson, 2010 WL 1778769, at * 4 (dismissing the plaintiff's NYSHRL and NYCHRL claims based upon the same allegations asserted in her NYSDHR complaint for lack of subject matter jurisdiction); Borum, 590 F.Supp.2d at 383 (finding that the New York Court of Appeals has interpreted the NYSHRL to preclude an action in court that is based upon the same incident as the NYSDHR complaint); Scopelliti v. Town of New Castle, 210 A.D.2d 308, 309, 620 N.Y.S.2d 405 (2d Dept. 1994) (holding that once the plaintiff filed his discrimination claim with the NYSDHR, he was precluded from bringing a cause of action in court asserting the same discriminatory acts). Accordingly, the branch of the DOE defendants' motion seeking dismissal

of so much of plaintiff's NYSHRL and NYCHRL claims as are based upon the same allegations as plaintiff asserted in the NYSDHR proceedings is granted and those claims are dismissed with prejudice for lack of subject matter jurisdiction.

B.    12(b)(6)

    1.    Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119-20 (2d Cir. 2010)(accord). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the

claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)); see also Ruston v. Town Board for Town of Skaneateles, ___ F.3d ___, 2010 WL 2680644, at * 2 (2d Cir. July 8, 2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.") However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950; see also Ruston, ___ F.3d ___, 2010 WL 2680644, at * 3 ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (quotations and citations omitted)). Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, 604 F.3d 110, 120-1.

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-153 (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

Since the NYSDHR charges and orders are public documents filed in an administrative proceeding, and are integral to plaintiff's Title VII and ADEA claims, the charges and orders are

properly considered on a motion to dismiss pursuant to Rule 12(b)(6).  See Morris v. David

Lerner Associates, 680 F.Supp.2d 430, 436 (E.D.N.Y. 2010); Muhammad v. New York City

Transit Authority, 450 F.Supp.2d 198, 204-205 (E.D.N.Y. 2006); see also James v. Federal

Reserve Bank of New York, No. 01-cv-1106, 2005 WL 1889859, at * 1 n. 2 (E.D.N.Y. Aug. 8,

2005) (noting that a court may take judicial notice of an EEOC charge).  Moreover, "[a] court

may take judicial notice of a document filed in another court not for the truth of the matters

asserted in the other litigation, but rather to establish the fact of such litigation and related

filings."  Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir.

2006).  Accordingly, I have considered the pleadings, decisions and orders in the prior state court

proceeding for the sole purpose of establishing the fact of that litigation and the claims plaintiff

raised therein.


2. Title VII and ADEA Claims

As an affirmative defense, the DOE defendants bear the burden of establishing plaintiff's

failure to timely exhaust her administrative remedies.  See Bowden v. United States, 106 F.3d 433,

437 (D.C. Cir. 1997); German v. Pena, 88 F.Supp.2d 216, 219-220 (S.D.N.Y. 2000).  Once

defendants meet their burden, the plaintiff must plead and prove "facts supporting equitable

avoidance of the defense."  Bowden, 106 F.3d at 437.

Claims that were not asserted in an administrative charge may be pursued in a federal

action under Title VII if they are "reasonably related" to those that were filed with the agency.

Ximines v. George Wingate High School, 516 F.3d 156, 158 (2d Cir. 2008) (per curiam);

Williams v. New York City Housing Authority, 458 F.3d 67, 70 (2d Cir. 2006); Deravin, 335

20

F.3d at 200. There are three types of "reasonably related" claims: (1) claims that "fall within the scope of the [agency's] investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) claims that allege retaliation for filing an administrative charge; and (3) claims that allege "further incidents of discrimination carried out in the same manner alleged in precisely [sic] the [administrative] charge." Carter v. New Venture Gear, Inc., 310 Fed. Appx. 454, 455 (2d Cir. 2009) (quoting Butts v. City of New York Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 1402-1403 (2d Cir. 1993), superceded by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care, 163 F.3d 684 (2d Cir. 1998)). In determining whether claims "fall within the scope of the [agency] investigation", the focus should be on the factual allegations contained in the administrative charge itself. Deravin, 335 F.3d at 201; see also Mathirampuzha v. Potter, 548 F.3d 70, 76 (2d Cir. 2008); Williams, 458 F.3d at 70 (accord). "The central question is whether the complaint filed with the [administrative agency] gave that agency 'adequate notice to investigate discrimination on both bases.'" Williams, 458 F.3d at 70 (citing Deravin, 335 F.3d at 202); see also Mathirampuzha, 548 F.3d at 77.

Plaintiff's March 2, 2005 NYSDHR charge, alleging discrimination based upon race, sex and age, was based upon: (1) an unsatisfactory performance rating plaintiff received on June 23, 2004; (2) the reassignment of plaintiff's after-school program (coordinator in the Mentoring Program) to a Caucasian teacher: (3) plaintiff's "demotion" to substitute teacher; and (4) the excessing of plaintiff's regular teaching position and subsequent reassignment of that position, upon re-opening, to a "non-Black" teacher. (Chiu Decl., Ex. A). Plaintiff's March 16, 2005, NYSDHR charge, alleging discrimination and retaliation, was based solely upon Taveras's special investigation of the October incident and finding that plaintiff was guilty of filing a false

police report against Resnick. (Chiu Decl., Ex. B). Nonetheless, plaintiff's allegations that Resnick assaulted her and created a hostile work environment during the 2004-2005 school year, (Compl., ¶¶ 7-11, 14-16, 30), and that Guttman and Piton harassed her following her "demotion" by, *inter alia*, "excessively" observing her classes during the 2004-2005 school year, (Compl., ¶ 28), fall within the scope of the NYSDHR's investigation of plaintiff's complaints and, thus, are reasonably related to the claims asserted in the administrative charges. The administrative charges gave the NYSDHR adequate notice to investigate plaintiff's allegations of discrimination and hostile work environment based upon those additional allegations and, indeed, the NYSDHR's orders specifically reference those additional acts. (Chiu Decl., Ex. D, pp. 2-4; Ex. E, p. 2). In addition, to the extent plaintiff alleges that her assignment to the TRC or "rubber room" and denial of a medical accommodation related to the assignment in May 2005 were retaliatory, those claims are also reasonably related to her NYSDHR charges.

To the contrary, the following claims are not reasonably related to either NYSDHR charge: (1) that plaintiff was denied an extension of time to complete her coursework in January 2007, (Compl., ¶ 66, 89); (2) that plaintiff was suspended without pay for four (4) months in November 2007, (Compl., ¶¶ 50-58, 67-86, 92, 122); (3) that plaintiff's medical benefits were terminated in January 2008, (Compl., ¶ 96); (4) that plaintiff's employment was terminated on July 1, 2008, (Compl., ¶ 115); and (5) that plaintiff's time sheets were falsified and her paychecks withheld in June 2008, (Compl., ¶¶104-114). All of those claims pertain to conduct occurring after the NYSDHR denied plaintiff's complaints on the merits on January 30, 2007, and, thus, those claims could not have fallen within the scope of the NYSDHR's investigation of plaintiff's administrative complaints.

Moreover, all of those additional allegations involve conduct occurring in 2007 and thereafter, almost two (2) years after plaintiff filed the NYSDHR complaints and one (1) year after the NYSDHR issued its determinations on the merits of the complaints. With the exception of plaintiff's claim that the DOE denied her request for an extension of time to complete her coursework on January 7, 2007, almost ten (10) months after she filed the NYSDHR complaints, plaintiff fails to allege any other instances of discriminatory or retaliatory conduct between the date she filed the NYSDHR complaints and the date the NYSDHR rendered its determinations on the merits of those complaints. Moreover, the first allegedly retaliatory act of which she complains following the NYSDHR's determinations occurred in November 2007, almost eleven (11) months later, when Lawson, an independent hearing officer, rendered his decision that a four (4) month suspension without pay was appropriate for the seven (7) specifications of which he found plaintiff guilty. Under the circumstances present here, the additional allegations are not in sufficient temporal proximity with either plaintiff's filing of the NYSDHR complaints in March 2005 or the NYSDHR's determinations on the merits of those complaints in January 2007 so as to support a finding that they were undertaken in retaliation for plaintiff's filing of the administrative complaints. See, e.g. McIntyre v. Longwood Central School District, No. 09-4597-CV, 2010 WL 2222469, at * 1 (2d Cir. June 4, 2010) (summary order) (finding that the passage of over a year between the filing of the EEOC complaint and the alleged retaliatory action, coupled with, *inter alia*, the lack of any other retaliatory incidents, support the conclusion that there was no causal connection between the filing of the EEOC complaint and the alleged retaliation).

Furthermore, none of the additional allegations involve further incidents of discrimination

or retaliation carried out in precisely the same manner as alleged in the NYSDHR charges so as to support a finding that they are reasonably related to the allegations in the charges.

Nor has plaintiff demonstrated that such "rare and exceptional circumstances" exist in this case so as to justify application of the equitable doctrines of tolling or estoppel to her failure to exhaust her administrative remedies with respect to any allegation of discriminatory or retaliatory conduct occurring in or after January 2007. See, e.g. Cherry v. City of New York, No. 09-2581-cv, 2010 WL 2501040, at * 2 (2d Cir. June 18, 2010) (summary order) (holding that equitable tolling is "only appropriate in rare and exceptional circumstances," such as when a party "is prevented in some extraordinary way from exercising his rights."); Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 80 (2d Cir. 2003) (accord); Veltri v. Building Service 32B-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004) (holding that although limitations periods are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing, equitable tolling is an extraordinary measure that applies only when the plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected under the circumstances present).  Plaintiff clearly knew of the necessity for exhausting administrative remedies, insofar as she filed two (2) previous administrative charges with the NYSDHR in March 2005, and she has not demonstrated, *inter alia*, that she was prevented in any way from filing charges with the NYSDHR relating to her additional allegations of discrimination and retaliation occurring in or after January 2007. Accordingly, so much of plaintiff's Title VII and ADEA claims as are based on conduct occurring in or after January 2007 are dismissed with prejudice for plaintiff's failure to exhaust her

administrative remedies.[5]

3.    Fair Labor Standards Act Claim

The FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), provides, in relevant part,

as follows:

> "[I]t shall be unlawful for any person * * * to discharge or in any other manner
> discriminate against any employee because such employee has filed any complaint
> or instituted or caused to be instituted any proceeding under or related to this
> chapter, or has testified or is about to testify in any such proceeding, or has served
> or is about to serve on an industry committee."

Contrary to Title VII's anti-retaliation provision, the Second Circuit has limited claims

under the FLSA's anti-retaliation provision "to retaliation for filing formal complaints, instituting

a proceeding, or testifying," and has expressly excluded from the reach of that provision informal

workplace complaints.  Lambert v. Genesee Hospital, 10 F.3d 46, 55 (2d Cir. 1993); see also

Aneja v. Triborough Bridge and Tunnel Authority, 35 Fed. Appx. 19, 22 (2d Cir. May 23, 2002)

(summary order); Higueros v. New York State Catholic Health Plan, Inc., 526 F.Supp.2d

342,345-6 (E.D.N.Y. 2007).

Since plaintiff does not allege that she filed any formal complaint or instituted any

proceeding under the FLSA prior to the denial of her unemployment benefits by the Department

of Labor in May 2008, the amended complaint fails to state a cause of action under 29 U.S.C. §

215(a)(3).  See, e.g. Lambert, 10 F.3d at 55-6; Higueros, 526 F.Supp.2d at 345-6; Caci v. Wiz of

Lake Grove, Inc., 267 F.Supp.2d 297, 300 (E.D.N.Y. 2003).  The original complaint filed in this

---

[5]  In light of this determination, it is unnecessary to consider the DOE defendants' remaining
contentions in support of dismissal of these claims.

action in July 2007, prior to the "re-determination" of plaintiff's unemployment benefits in May 2008, (Compl., ¶ 102), did not assert a cause of action under the FLSA. Accordingly, so much of plaintiff's fourth claim for relief as asserts a violation of 29 U.S.C. § 215(a)(3) is dismissed for failure to state a claim.[6]

### 4. Collateral Estoppel

The DOE defendants contend that the doctrine of issue preclusion bars plaintiff from re-litigating her Section 1983 claims in this Court.

"A 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties.'" Merrill v. Town of Addison, 763 F.2d 80, 83 (2d Cir. 1985) (quoting Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). "Such preclusive effect * * * applies to federal questions decided by state courts, including claims brought under 42 U.S.C. § 1983." Id. at 83-84; see also Allen v. McCurry, 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) ("The federal courts generally have * * * consistently accorded preclusive effect to issues decided by state courts.") "[F]ederal courts [must] give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Allen, 449 U.S. at 96, 101 S.Ct. 411. "[I]n federal actions based on 42 U.S.C. § 1983, state administrative fact-finding is given the same preclusive effect as it would receive in courts of the same state. * * * New York courts give quasi-judicial administrative fact-finding preclusive effect where there

---

[6] Since, as stated above, plaintiff's NLRA claim is dismissed for lack of subject matter jurisdiction, plaintiff's fourth claim for relief is dismissed in its entirety with prejudice.

has been a full and fair opportunity to litigate." <u>Burkybile v. Board of Education of the Hastings-on-Hudson Union Free School District</u>, 411 F.3d 306, 310, 312 (2d Cir. 2005) (citations omitted).

Under the doctrine of *res judicata*, or claim preclusion, a "final judgment forecloses successive litigation of the very same claim, whether or not relitigation of that claim raises the same issues as in the earlier suit." <u>Taylor v. Sturgell</u>, 553 U.S. 880, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008) (quotations and citation omitted); <u>see</u> <u>also</u> <u>Allen</u>, 449 U.S. at 94, 101 S.Ct. 411 ("a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286-7 (2d Cir. 2002) (accord). However, "res judicata does not bar subsequent litigation when the court in the prior action could not have awarded the relief requested in the new action." <u>Marvel</u>, 310 F.3d at 287; <u>see</u> <u>also</u> <u>Johns v. Rampe</u>, 333 Fed. Appx. 644, 646 (2d Cir. June 26, 2009). Accordingly, the doctrine of *res judicata* is unavailable here. <u>See</u>, <u>e.g.</u> <u>Vargas v. City of New York</u>, 377 F.3d 200, 205 (2d Cir. 2004).

Nonetheless, the related but distinct doctrine of collateral estoppel, or issue preclusion, is applicable in such cases. <u>See</u>, <u>e.g.</u> <u>Genova v. Town of Southampton</u>, 776 F.2d 1560, 1561 (2d Cir. 1985) (per curiam) (holding that a plaintiff may not re-litigate factual issues decided in a prior state court action that are central to the constitutional claims it asserts in federal court if New York law would bar him from raising those issues in a subsequent suit in state court); <u>see</u> <u>also</u> <u>LaFleur v. Whitman</u>, 300 F.3d 256, 272 (2d Cir. 2002). Collateral estoppel precludes "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different

claim." Taylor, 553 U.S. 880, 128 S.Ct. at 2171; see also Marvel, 310 F.3d at 288 (holding that collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue of fact or law that was raised in a prior action or proceeding and decided against that party or those in privity with that party).

### a.    Section 3020-a Hearing

The Second Circuit has held that Section 3020-a hearings are administrative adjudications that must be given preclusive effect, Burkybile, 411 F.3d at 311-2; see also Page v. Liberty Central School District, 679 F.Supp.2d 448, 452 (S.D.N.Y. 2010), based upon its application of the following test enunciated in University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986):

> "[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state's courts."

Id. at 312; see also Locurto v. Giuliani, 447 F.3d 159, 170 (2d Cir. 2006). "[F]or collateral estoppel to give preclusive effect to administrative agency findings, 'the issue sought to be precluded [must be] identical to a material issue necessarily decided by the administrative agency in a prior proceeding.'" Locurto, 447 F.3d at 170-1 (quoting Jeffreys v. Griffin, 1 N.Y.3d 34, 769 N.Y.S.2d 184, 801 N.E.2d 404, 407 (N.Y. 2003)).

Pursuant to New York Education Law § 3020-a, Lawson adjudicated the multiple disciplinary charges against plaintiff following a pre-hearing conference, twelve (12) days of substantive hearings over a four (4) month period during which "[a]ll witnesses were sworn and each side was afforded a full opportunity to place evidence in the record," (Chiu Decl., Ex. C, p.

2), another day of closing statements and a limited in-camera review of Resnick's personnel file. Thus, plaintiff had an adequate, full and fair opportunity to litigate the substance of the disciplinary charges against her.[7]

Following the hearing, Lawson issued a thirty-two (32) page opinion and decision in which he: (A) made findings of fact with respect to the disciplinary charges against plaintiff, (Chiu Decl., Ex. C, pp. 2-26); (B) dismissed two (2) of the specifications (Specifications 8 and 10) against plaintiff for lack of evidence, (id., pp. 28, 30); (C) denied the specifications relating to (i) plaintiff's absences during the 2003-2004 and 2004-2005 school years (Specifications 1 and 4) as "not actionable" or "not subject to discipline," (id., p. 30), and (ii) plaintiff's removal from the Mentoring Program (Specification 3) as "not subject to disciplinary action in [the Section 3020-a] forum," (id.); (D) sustained the specifications relating to plaintiff's (i) latenesses (Specifications 2(1), (2), (3), (9), (12), (13) and (14); 5), (ii) failure to meet with Resnick (Specification 6), (iii) failure to provide satisfactory coverage for her teaching assignments and/or rendering of unsatisfactory lessons on November 24, 2004 (Specification 7), February 4, 2005 (Specification 12) and February 15, 2005 (Specification 11), and (iv) filing of a false police report against Resnick (Specification 9); and (E) determined that a four (4) month suspension without pay was an appropriate penalty for the charges he sustained.

As is relevant here, Lawson also made the following factual findings: (1) that the record supported the conclusion that plaintiff failed to meet her responsibilities as a coordinator in the Mentoring Program, as a result of which Resnick removed her from that position, (Chiu Decl.,

_____

[7] Although plaintiff challenges the fairness of the Section 3020-a hearing, the state court rejected her claims and, for the reasons set forth below, that finding is itself entitled to preclusive effect.

Ex. C, p. 29); (2) that plaintiff's failure to attend meetings with Resnick constituted insubordination, (id., p. 30); (3) that the police report plaintiff filed against Resnick was false and irresponsible, (id., p. 31); (4) that plaintiff's classes and/or instructions on certain dates were "unraveled" and "scattered", that "a competent teacher" could have performed better than plaintiff and that plaintiff displayed a "ready willingness to forgo active teaching" when met with resistance from students, (id., pp. 30-31); (5) that plaintiff's record of employment was "no more than average," (id., p. 32); (6) that plaintiff displayed a "defiant attitude" toward her administrators, (id.); and (7) that plaintiff was "deserving of discipline * * * to a degree that she will come to realize that she holds a position of great responsibility and must discharge the duties of that position professionally."  (Id.)

The facts found by Lawson at the Section 3020-a hearing, i.e., that plaintiff had demonstrated incompetence, insubordination, defiance, unprofessionalism and misconduct, as a result of which a penalty of a four (4) month suspension without pay was appropriate, must be accorded preclusive effect.  See, e.g. Burkybile, 411 F.3d at 313 (accepting the hearing officer's determinations that the plaintiff was terminated for just cause and had demonstrated incompetence, insubordination, neglect, conduct unbecoming an administrator, and misconduct).  Thus, plaintiff is precluded from disputing the content of the substantiated charges or that they justified a penalty of a (4) month suspension without pay.  See, e.g. Fischer v. NYC Department of Education, 666 F.Supp.2d 309, 320 (E.D.N.Y. 2009) (finding that although the Section 3020-a decision did not preclude the plaintiff's retaliation claim as such, the plaintiff could not dispute the content of the substantiated charges nor that they justified disciplinary action).  Moreover, Lawson's findings substantiating seven (7) of the disciplinary charges brought against plaintiff

and determining that a four (4) month suspension without pay was an appropriate penalty therefor

rebut any claim by plaintiff that the suspension was imposed for a retaliatory purpose.  See, e.g.

Roemer v. Board of Education of City of New York, 150 Fed. Appx. 38, 39-40 (2d Cir. Sept. 23,

2005)[8] (affirming the dismissal of the plaintiff's First Amendment retaliation claim as a matter of

law since the finding at the Section 3020-a hearing that the plaintiff had been terminated for

cause rebutted any claim that the plaintiff's discharge was executed in retaliation for the exercise

of any First Amendment right).  Accordingly, to the extent plaintiff's Section 1983 claims, and

remaining ADEA claims, are based upon: (A) the substance of the disciplinary charges against

her, including, *inter alia*, her dismissal from the Mentoring Program and Taveras's investigation

into, and finding of guilt with respect to, her filing of a false police report against Resnick; or (B)

her four (4) month suspension without pay, those claims are dismissed with prejudice as

---

[8]  The Second Circuit's summary order in Roemer vitiates plaintiff's contention that the procedure employed in New York City, pursuant to which the hearing officer is assigned "from a panel the UFT and the DOE have developed over the past decade or more," (Plaintiff's Opposition to Defense Motion for Summary Judgment Memorandum of Law [Plf. Opp.], p. 14), which differs from the procedures employed in the rest of New York State under Section 3020-a, violates teachers' due process rights.  Plaintiff's attempt to distinguish Roemer is unpersuasive. Moreover, plaintiff's contention that "[s]ince September 2006 [], [Section 3020-a] now reads that the collective bargaining agreement ["CBA"] between the UFT and the DOE shall supersede the 3020-a provisions," (id.), and particularly her challenge to the purported elimination of the right to a panel of three arbitrators when charges include incompetence or pedagogical judgment, is a red herring, since the Section 3020-a hearing process against plaintiff, including the selection of Lawson as the hearing officer presiding over that process, commenced in 2005, prior to the purported law change.  Plaintiff's contention regarding the change in New York Education Law § 2590(j) in 2006 with respect to who may initiate disciplinary charges likewise fails and her claims that the "ghoulish[ness]" of the "rubber rooms" and the "executioner-like" nature of the hearing officers in New York City encourage settlements of disciplinary charges prior to the Section 3020-a hearing, (id. at 15), is also irrelevant, since plaintiff did not settle the charges against her and, in fact, proceeded with a full Section 3020-a hearing.

precluded by the doctrine of collateral estoppel.[9]

b.      State Court Proceeding

In the petition filed in the state court proceeding, plaintiff alleged, *inter alia*: (1) that the DOE defendants retaliated against her following her complaint that another teacher was engaging in improper sexual relations with a student by, among other things, reassigning her to the TRC and initiating fabricated disciplinary charges against her; (2) that she was subjected to a hostile work environment since 2004 by, among other things, being "excessed" from her regular teaching position and demoted to a substitute teacher; (3) that Lawson committed certain improprieties during the Section 3020-a hearing; (4) that Resnick bullied, harassed and intimidated her; (5) that Taveras's investigation of the October incident and subsequent finding that plaintiff was guilty of filing a false police report against Resnick were improper; (6) that she was improperly assigned to the TRC in March 2005; (7) that the conditions at the TRC were detrimental to her health and safety; (8) that she was refused a medical accommodation, insofar as her salary was docked when she "curtailed" her hours at the TRC on her physician's orders; (9) that she was suspended for

---

[9]  For the sake of clarity, only the following ADEA and Title VII claims (first and second claims for relief, respectively) remain against the DOE: (A) plaintiff's discrimination, retaliation and hostile work environment claims under the ADEA and Title VII based upon (i) Resnick's, Guttman's and Piton's alleged harassment of her during the 2004-2005 school year, to the extent those claims are not otherwise precluded by the seven (7) disciplinary charges sustained against her, (ii) Taveras's refusal to act upon her complaints, (iii) the initiation of disciplinary charges against her in 2005, (iv) her assignment to the TRC in March 2005 and (v) the denial of her request for a medical accommodation in May 2005; and (B) plaintiff's discrimination and retaliation claims under Title VII based upon the unsatisfactory rating of her performance in June 2005, the excessing of her regular teaching position in 2004 and reassignment of that position to a non-African-American teacher in February 2005, and her "demotion" to an ATR, or substitute teacher, position.

four (4) months without pay based upon Lawson's arbitrary and capricious decision and order; and (10) that another teacher accused of inappropriate behavior was treated more favorably than she. (Chiu Decl., Ex. G). Plaintiff sought the following relief: (1) restoration of her teaching duties; (2) "Abinicio [sic] stay four month suspension without pay", (id.); (3) immediate payment of salary and benefits withheld from her; and (4) an immediate refund of a monetary penalty previously paid by her. (Id.)

Moreover, in her motion papers submitted in the state court proceeding, plaintiff alleged, *inter alia*, that the DOE deprived her of her due process rights during the arbitration hearing; retaliated against her for her filing of the March 2, 2005 NYSDHR charge by, among other things, conducting a perfunctory investigation of her complaints against Resnick and terminating her medical benefits; and retaliated against her for exercising her First Amendment free speech rights by, among other things, having her unemployment benefits re-determined. (Chiu Decl., Exs. H and I). The relief plaintiff requested in her motion papers was: (1) vacatur of Lawson's decision; (2) reimbursement of her salary, with interest; (3) restoration of her teaching license and position; and (4) injunctive relief "forever" enjoining the DOE from further retaliation against her. (Id.)

By order dated July 28, 2008, Justice Sheila Abdus-Salaam, *inter alia*, denied plaintiff's petition in its entirety on the merits, finding that plaintiff had not demonstrated that Lawson's decision was not supported by adequate evidence; that the penalty of four (4) months suspension without pay did not shock the conscience; and that plaintiff failed to demonstrate any grounds for vacatur of Lawson's decision pursuant to N.Y. C.P.L.R. § 7511. Saunders v. City of New York, Department of Education, No. 400258/08 (N.Y. Sup. Ct. July 28, 2008) (See Chiu Decl., Ex. J).

33

In this case, plaintiff raises similar, if not identical, equal protection, due process, and First Amendment retaliation claims as she previously raised in the state court proceeding. Under New York law, collateral estoppel precludes a party from relitigating an issue when: "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Vargas, 377 F.3d at 205-206 (quotations and citation omitted). The party asserting preclusion carries the burden of establishing the former element, whereas the party opposing preclusion must demonstrate the latter element. See Evans v. Ottimo, 469 F.3d 278, 281-2 (2d Cir. 2006) (citing Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 456, 492 N.Y.S.2d 584, 482 N.E.2d 63 (N.Y. 1985)).

i.    Article 75

New York Education Law § 3020-a expressly provides that an appeal of a hearing officer's decision is limited to an application to vacate or modify that decision pursuant to New York Civil Procedure Law and Rules § 7511. Section 3020-a further provides that "[t]he [state] court's review shall be limited to the grounds set forth in [Section 7511]."

A state court's review of an arbitration award under N.Y. C.P.L.R. § 7511 is narrow and permits vacatur of an arbitration award only on the grounds that the award was procured through "corruption, fraud or misconduct," that the arbitrator was not impartial, that the arbitrator exceeded his or her power, or that the arbitrator failed to follow the procedures set forth in Article 75. See Bottini v. Sadore Management Corp., 764 F.2d 116, 121 (2d Cir. 1985). Notwithstanding the limited judicial review of an arbitration award provided by Section 7511 (or

hearing officer's decision provided by Section 3020-a), a state court has the authority to consider claims alleging a violation of due process with respect to the conduct of the arbitration proceeding in an Article 75 proceeding. See Giardina v. Nassau County, No. 08-CV-2007, 2010 WL 1850793, at * 4-5 (E.D.N.Y. May 7, 2010) (holding that the state court had the ability to consider the plaintiffs' claims regarding a lack of due process in the arbitration and can examine whether the procedures used in the arbitration itself complied with due process); see also Hegarty v. Board of Education of City of New York, 5 A.D.3d 771, 772, 773 N.Y.S.2d 711 (2d Dept. 2004) (holding that where the parties are forced to engage in compulsory arbitration, such as pursuant to Section 3020-a, judicial review under Article 75 requires that the award be in accord with due process and supported by adequate evidence in the record).

Plaintiff clearly had a full and fair opportunity to litigate her due process claims relating to the Section 3020-a hearing in the state court proceeding. Plaintiff actually raised in the state court proceeding the same claims with respect to Lawson's conduct of, and the procedures employed during, the Section 3020-a hearing as she raises in this action. In addition to raising her arguments in the state court petition, plaintiff had the opportunity to raise her arguments on her prior application for a temporary stay of her suspension, which was also accompanied by a petition, as well as in her opposition to defendants' motion to dismiss the petition and upon her motion for reconsideration of the initial order dismissing her petition. Indeed, although plaintiff's state court petition was initially denied as time-barred, the state court subsequently granted plaintiff's application for reconsideration and, upon reconsideration, denied the petition on the merits. By denying the petition pursuant to Article 75, the state court actually and necessarily decided both that Lawson's decision was supported by adequate evidence and that the

decision was in accord with due process.  Cf. Hegarty, 5 A.D.3d at 772.  Accordingly, to the

extent not already dismissed, plaintiff's relating to the Section 3020-a hearing, including her

Section 1983 due process claims, are precluded by the doctrine of collateral estoppel.


ii.      Article 78

In addition to seeking vacatur of Lawson's decision in state court pursuant to Article 75,

plaintiff also sought relief pursuant to N.Y. C.P.L.R. §§ 7803(3) and (4).

Although plaintiff had a full and fair opportunity to litigate her constitutional issues in the

state court proceeding, there is no indication in the state court's July 28, 2008 order that it

actually addressed or decided any of plaintiff's claims on the merits other than those relating to

the Section 3020-a hearing.  Nor was it necessary for the state court to determine those issues in

order to confirm Lawson's decision pursuant to Article 75.  See, e.g. Morey v. Somers Central

School District, No. 06 Civ. 1877, 2007 WL 867203, at * 7 (S.D.N.Y. Mar. 21, 2007) (finding

that neither the hearing officer nor the state court in the Article 78 proceeding necessarily decided

the plaintiff's First Amendment retaliation claim); cf. Bottini, 764 F.2d at 121.  Accordingly, the

branch of the DOE defendants' motion seeking dismissal of plaintiff's remaining Section 1983

equal protection and First Amendment retaliation claims as barred by the doctrine of collateral

estoppel is denied.[10]

---

[10]  For the sake of clarity, plaintiff's Section 1983 equal protection claims remain to the same
extent as her Title VII and ADEA claims remain, except as set forth below, and her First
Amendment claim, which is based upon her April or May 2008 interview with the Daily News
and her allegations that the DOE defendants subsequently falsified her timesheets and withheld
her pay in June 2008, (Compl., ¶ 140), also remains.

5.     Remaining Due Process Claim

Plaintiff's only remaining due process claim is against Dennis, Antinez and the DOE based upon allegations that Dennis and Antinez falsified her timesheets and withheld her paychecks in June 2008. However, that claim fails to state a plausible claim for relief because Dennis and Antinez were not high-ranking officials with "final authority over significant matters," Rivera-Powell v. New York City Board of Elections, 470 F.3d 458, 465-6 (2d Cir. 2006); there was an adequate post-deprivation remedy available for her to challenge the purportedly intentional failure to pay her, see N.Y. C.P.L.R. § 7803(1); and plaintiff does not allege that she was prevented from commencing such a proceeding by the acts or omissions of others. See Hudson v. Palmer, 468 U.S. 517, 531-533, 104 S.Ct. 3194, 92 L.Ed.2d 393 (1984) (holding that there is no due process violation when the state provides an adequate post-deprivation remedy for an unauthorized intentional deprivation of property); Rivera-Powell, 470 F.3d at 465 (accord); Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001) (holding that the plaintiffs failed to state a due process claim in light of the availability of subsequent Article 78 review of their claims in state court). Accordingly, plaintiff cannot state a due process claim as a matter of law based upon the falsification of her timesheets and subsequent failure to pay her in June 2008. See, e.g. Sindone v. Kelly, No. 06-3230-cv, 254 Fed.Appx. 58, 59 (2d Cir. Nov. 15, 2007). Therefore, the branch of the DOE defendants' motion seeking dismissal of plaintiff's remaining due process claim is granted and that claim is dismissed with prejudice for failure to state a claim for relief.

6.     Remaining Equal Protection Claims

The Equal Protection Clause requires that the government treat all similarly situated individuals alike.  City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004).  Equal protection selective enforcement claims require two (2) essential elements: (1) that the plaintiff "was treated differently from other similarly situated individuals"; and (2) that the selective treatment was motivated by some "impermissible consideration[] such as 'race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [the plaintiff].'"  U.S. v. Stewart, 590 F.3d 93, 121 (2d Cir. 2009), cert. denied by Sattar v. U.S., 130 S.Ct. 1924, 176 L.Ed.2d 404 (2010) (quoting Harlen Associates v. Inc. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)); see also Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007); Cobb, 363 F.3d at 110.  Conclusory allegations of selective treatment are insufficient to state an equal protection claim.  See D.F. ex rel. Finkle v. Board of Education of Syosset Central School District, 386 F.Supp.2d 119, 128 (E.D.N.Y. 2005), aff'd, 180 Fed. Appx. 232 (2d Cir. 2006).  In addition, "[t]here is no recognized claim for retaliation under the Equal Protection Clause."  Dorcely v. Wyandanch Union Free School District, 665 F.Supp.2d 178, 199, 201.  Moreover, the Supreme Court has explicitly held that "class-of-one" equal protection claims, i.e., that defendants intentionally treated the plaintiff differently from others similarly situated and that there was no rational basis for the differential treatment, may not be asserted in the public employment context.  Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 128 S.Ct. 2146, 2152, 170 L.Ed.2d 975 (2008); see also Conyers v. Rossides, 558 F.3d 137, 151 (2d Cir. 2009) (recognizing that the Supreme Court has explicitly disapproved of "class-of-one"

equal protection claims in the public employment context).

The only allegations from which it can reasonably be inferred that plaintiff was treated differently than other teachers to whom she was similarly situated based upon a discriminatory motive relate to her claims: (1) that she was removed from the Mentoring Program and replaced with a Caucasian employee; (2) that the Caucasian employee of whom she complained about having inappropriate sexual relations with a student received more favorable discipline than she did; and (3) that she was "excessed" from her regular teaching position and that position was subsequently re-assigned to a younger teacher who was not African-American. All of the other allegations relating to plaintiff's equal protection claim, which is brought in the public employment context, allege only that plaintiff was treated differently than other similarly situated employees in retaliation for her complaints, and are not based upon her membership in any protected class. Since, as a matter of law, plaintiff cannot state a "class of one" equal protection claim, so much of her equal protection claim as is based upon any factual allegations other than the three specified above is dismissed for failure to state a claim. See, e.g. Massi v. Flynn, 353 Fed. Appx. 658, 660 (2d Cir. Nov. 24, 2009) (summary order), cert. denied, 130 S.Ct. 2404, 176 L.Ed.2d 924 (2010) (holding that the plaintiff's "class-of-one" equal protection claim was barred by Engquist because the plaintiff claimed only that he was treated differently from other similarly situated employees for malicious reasons, not on the basis of his membership in any particular class); Conyers, 558 F.3d at 152 (affirming dismissal of the plaintiff's equal protection claim because it did not arise out of the plaintiff's membership in any particular group and, thus, fell under Engquist's holding that a "class-of-one" equal protection claim does not apply in the public employment context); Appel v. Spiridon, 531 F.3d 138, 141 (2d Cir. 2008) (reversing an order

granting a preliminary injunction in favor of the plaintiff, a tenured professor, on her "class of one" equal protection claim alleging that she was suspended without pay for refusing to undergo a psychiatric examination in light of Engquist's holding that the Equal Protection Clause does not apply to a public employee asserting a "class-of-one" claim).

Moreover, for the reasons set forth above, plaintiff's first two allegations are precluded by Lawson's finding that she had been removed from the Mentoring Program for her failure to meet her responsibilities as a coordinator and determination that a four (4) month suspension without pay was an appropriate penalty for the seven (7) disciplinary charges he sustained against plaintiff. Since plaintiff has not alleged: (A) that any other coordinator in the Mentoring Program also failed to meet his or her responsibilities in that position, but was not removed from that program; or (B) that the Caucasian teacher identified by plaintiff as similarly situated to herself was found guilty of more than one disciplinary charge against her, was found guilty of charges relating to insubordination, incompetence, etc., or was given a penalty less than that recommended by an independent hearing officer after a Section 3020-a hearing, she cannot state an equal protection claim as a matter of law based upon those allegations.

In sum, plaintiff may only proceed with her equal protection claim based upon her allegation that she had been "excessed" from her regular teaching position and that the position was subsequently reassigned to a younger teacher who was not African-American during the same school year.

      7.    Monell Claim

A municipality or municipal entity cannot be held liable under § 1983 on a *respondeat*

*superior* theory.  See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008), cert. denied, 130 S.Ct. 95, 175 L.Ed.2d 234 (2009).  To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show "an injury to a constitutionally protected right * * * that * * * was caused by a policy or custom of the [municipal entity] or by a municipal official 'responsible for establishing final policy.'"  Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (quoting Skehan v. Village of Mamaroneck, 465 F.3d 96, 108-109 (2d Cir. 2006) overruled on other grounds by Appel v. Spiridon, 531 F.3d 138, 140 (2d Cir. 2008)); see also Monell, 436 U.S. at 690-91, 98 S. Ct. 2018.  To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipal entity; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.  See Brandon v. City of New York, ___ F.Supp.2d ___, 2010 WL 1375207, at * 13 (S.D.N.Y. Mar. 30, 2010); Sulehria v. City of New York, 670 F.Supp.2d 288, 320 (S.D.N.Y. 2009); see also Pangburn v. Culbertson, 200 F.3d 65, 71-2 (2d Cir. 1999).

Plaintiff's allegations of a municipal policy or custom are wholly conclusory and merely recite the elements necessary to establish a Monell claim, (see Compl., ¶¶ 167-8), which is insufficient to state a plausible claim for relief.  See, e.g. Iqbal, 129 S.Ct. at 1949.  Moreover, as a

matter of law, none of the DOE defendants are final policymakers for the DOE, see Moore v. City of New York, No. 08 Civ. 8879, 2010 WL 742981, at * 6 (S.D.N.Y. Mar. 2, 2010); Shapiro v. New York City Dept. of Educ., 561 F.Supp.2d 413, 420 (S.D.N.Y. 2008); N.Y. Educ. Law § 2590-g; and plaintiff does not allege that the Chancellor, who is the final policymaker for the DOE, failed to properly train or supervise any of the individual DOE defendants.

However, liberally construing plaintiff's amended complaint, the following allegations may support a plausible inference of an official policy or custom of the DOE, either formal or so persistent and widespread as to constitute a constructive policy: (1) that teachers awaiting disciplinary action, like plaintiff, are assigned to the TRC, at which unsafe and unhealthy conditions were present; and (2) that the procedures employed by the DOE pursuant to Section 3020-a to discipline teachers violated teachers' due process rights. The latter claim, in effect, constitutes a facial challenge to New York Education Law Section 3020-a. That contention, however, has been expressly rejected by the Second Circuit. Roemer, 150 Fed. Appx. at 40[11] (holding that Section 3020-a provides all the process due and does not deny equal protection to any class of individuals). Accordingly, that latter allegation fails to state a Monell claim as a

---

[11] To the extent plaintiff now challenges the constitutionality of Section 3020-a as applied to New York City teachers, including herself, she made no such contention in either her original complaint or amended complaint, and has not sought leave to amend her complaint to assert such a claim. Since the motion and cross motion were filed on the eve of trial, I decline to *sua sponte* grant plaintiff leave to amend her complaint a second time to assert such a claim, particularly since, *inter alia*, she did not raise those claims during the state court proceedings or in the three (3) years that this action has been pending in this Court and the DOE defendants would be prejudiced by allowing plaintiff leave to amend her amended complaint at such a late date. See, e.g. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (affirming denial of leave to amend based upon the inordinate delay in seeking such relief, i.e., nearly two years had elapsed between the time the original complaint had been filed and the motion seeking leave to amend and the defendant had moved for summary judgment).

matter of law and, therefore, any such claim is dismissed with prejudice.

Nonetheless, contrary to the DOE defendants' conclusory contention, plaintiff's allegation pertaining to the assignment of teachers awaiting disciplinary action, including herself, to the TRC at least plausibly states a Monell claim. Accordingly, the branch of the DOE defendants' motion seeking dismissal of the Monell claim against the DOE based upon that allegation is denied.[12]

### 8. NYSHRL and NYCHRL Claims

State notice of claim requirements apply to state law claims brought in federal court. See DeCarolis v. Town of Vienna, 322 Fed. Appx. 25, 26 (2d Cir. Apr. 8, 2009) (summary order); Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999). New York Education Law §§ 3813(1) provides, in pertinent part, that:

> "1. No * * * claim against the district or any such school, or involving the rights or interests of any district or any such school shall be prosecuted or maintained against any school district, board of education, * * * or any officer of a school district, board of education * * * unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action * * * is founded was presented to the governing body of said district or school within three months after the accrual of such claim, * * *."

New York Education Law § 3813 requires service of a notice of claim upon a school district or board of education as a condition precedent to maintaining any action against the school district or board of education, or any of its officers, agents or employees acting within the scope of their employment. See Rodriguez v. International Leadership Charter School, No. 08

---

[12]   Thus, plaintiff may proceed with her Section 1983 Monell claim against the DOE based solely upon her assignment to the TRC while she awaited determination of the disciplinary charges against her.

Civ. 1012, 2009 WL 860622, at * 5 (S.D.N.Y. Mar. 30, 2009); Bucalo v. East Hampton Union

Free School District, 351 F.Supp.2d 33, 34-5 (E.D.N.Y. 2005).  "Notice of claim requirements

'are construed strictly by New York state courts * * * [and a] [f]ailure to comply with th[o]se

requirements ordinarily requires a dismissal for failure to state a cause of action."  Hardy, 164

F.3d at 793-794; see also Rodriguez, 2009 WL 860622, at * 5 (holding that failure to present a

notice of claim within the statutory time limitation is a fatal defect); Bucalo, 351 F.Supp.2d at 35

(holding that a failure to present a notice of claim is a fatal defect).

 Nonetheless, Section 3813 (2-a) provides, in relevant part, that:

> "[u]pon application, the court, in its discretion, may extend the time to serve a
> notice of claim.  The extension shall not exceed the time limited for the
> commencement of any action by the claimant against any district or any such
> school. * * *."

"[I]f the applicable statute of limitations has expired, the court lacks jurisdiction to grant

an extension" under Section 3813(2-a).  Bucalo, 351 F.Supp.2d at 35; see also Santiago v.

Newburgh Enlarged City School District, 434 F.Supp.2d 193, 197 (S.D.N.Y. 2006).  Pursuant to

Section 3813(2-b), "no action or special proceeding shall be commenced against [a school district

or board of education ] more than one year after the cause of action arose * * *."  See Bucalo,

351 F.Supp.2d at 35.

 The last act of which plaintiff complains is her termination on July 1, 2008 and plaintiff

does not assert any basis upon which to equitably toll the limitations period.  Accordingly,

plaintiff was required to file a notice of claim with respect to her NYSHRL and NYCHRL claims,

or seek an extension of time within which to do so, within one (1) year from that date, i.e., by

July 1, 2009.  Thus, this Court is without jurisdiction to now extend plaintiff's time to file a

notice of claim.

Since plaintiff does not allege that she filed a notice of claim against the DOE defendants in accordance with New York Education Law § 3813(2), and this Court is without jurisdiction to extend her time to file a notice of claim, she cannot state a claim for relief under the NYSHRL and NYCHRL.  See, e.g. Rodriguez, 2009 WL 860622, at * 6 (finding that the plaintiff's failure to serve the defendants with a proper notice of claim was fatal to her NYSHRL and NYCHRL claims).  Accordingly, the branch of the DOE defendants' motion seeking dismissal of plaintiff's remaining NYSHRL and NYCHRL claims for failure to state a claim is granted and, thus, those claims (sixth and seventh claims for relief, respectively) are dismissed with prejudice in their entirety.

C.    Summary Judgment[13]

1.    Standard of Review

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); see Ricci v. DeStefano, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (holding that "[o]n a

---

[13]  To the extent plaintiff seeks summary judgment on the claims dismissed on the pleadings as set forth above, including, *inter alia*, her claims relating to the procedures employed during the Section 3020-a hearing and her challenges to Lawson as the hearing officer, those branches of her motion are denied as moot and will not be separately addressed below.

motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (Emphasis added) (internal quotations and citation omitted)). "A fact is material if it 'might affect the outcome of the suit under governing law.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci, 129 S.Ct. at 2677 (quoting Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

If the district court determines that there is a genuine dispute as to a material fact, the court must then "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment," Spinelli, 579 F.3d at 166 (internal quotations and citation omitted); see also Aulicino v. New York City Dept. of Homeless Services, 580 F.3d 73, 79 (2d Cir. 2009), to determine whether there is a genuine issue for trial. See Ricci, 129 S.Ct. at 2677. A genuine issue exists for summary judgment purposes "where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact," F.D.I.C. v. Great American Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quotations and citation omitted), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."

Id.; see also Spinelli, 579 F.3d at 166. Thus, the nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. Spinelli, 579 F.3d at 166 (internal quotations and citations omitted); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### 2. Title VII and ADEA Claims

Plaintiff seeks summary judgment on her Title VII and ADEA retaliation and Title VII discrimination claims (second and first claims for relief, respectively).

Claims brought pursuant to Title VII and the ADEA are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[14] See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010); Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010); Aulicino, 580 F.3d at 80.

### a. Retaliation Claims

Under the McDonnell Douglas analysis, a plaintiff must first establish a prima face case of retaliation by demonstrating: (1) that he or she participated in a protected activity; (2) that the employer was aware of the protected activity; (3) that the employer took adverse action against

---

[14] Although some courts have questioned the viability of the McDonnell Douglas framework to ADEA claims following the Supreme Court's decision in Gross v. FBL Financial Services, 557 U.S. ___, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), the Second Circuit has held that Gross did not reject the burden-shifting framework for ADEA cases altogether, Gorzynski, 596 F.3d at 106, 110, and courts in this Circuit continue to apply the framework, as modified by Gross, to ADEA claims. See, e.g. Miller v. National Association of Securities Dealers, Inc., ___ F.Supp.2d ___, 2010 WL 1371029, at * 9 (E.D.N.Y. Apr. 6, 2010).

the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse employment action. McDonnell Douglas, 411 U.S. 792, 93 S.Ct. 1817; see Hicks, 593 F.3d at 164; Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). The burden of establishing a prima face case is minimal. See Hicks, 593 F.3d at 164; Jute, 420 F.3d at 173.

Once the plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its actions. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817; see Hicks, 593 F.3d at 164. If the defendant satisfies its burden, the plaintiff must establish by a preponderance of the evidence that the defendant's proffered reason was merely a pretext for retaliation. McDonnell Douglas, at 804, 93 S.Ct. 1817; Malacarne, 289 Fed. Appx. at 447; Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

i.      Title VII

A.      Prima Facie Case

Plaintiff alleges that she engaged in a protected activity by filing complaints with the NYSDHR in March 2005; that the NYSDHR notified the DOE of the complaints; and that shortly after she filed the first complaint on March 2, 2005, disciplinary charges were initiated against her and, on or about March 12, 2005, she was assigned to the TRC. Accordingly, plaintiff has established a prima facie claim for retaliation.

B.      Non-Retaliatory Reasons

For the reasons set forth above, Lawson's findings, *inter alia*, that plaintiff was guilty of seven (7) of the disciplinary charges initiated against her is preclusive evidence of the DOE's

non-retaliatory reasons for the initiation of the charges against plaintiff and for her assignment to the TRC pending determination of the charges.

## C. Pretext

Under Title VII, a plaintiff can establish pretext by demonstrating that a retaliatory motive played a part in the alleged adverse employment action, even if it was not the sole cause. See Ibok v. Securities Industry Automation Corp., 09-1930-cv, 2010 WL 808065, at * 2 (2d Cir. Mar. 10, 2010) (summary order); Hicks, 593 F.3d at 164; Malacarne v. City University of New York, 289 Fed. Appx. 446, 447 (2d Cir. Aug. 8, 2008) (summary order). A plaintiff may establish that retaliation was a "substantial or motivating factor" behind an adverse employment action either (1) "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001) (internal quotations and citation omitted).

The issue of whether the DOE's non-retaliatory reasons for the initiation of disciplinary charges against plaintiff and assignment of her to the TRC pending resolution of those charges was pretextual, i.e., whether a retaliatory motive was a motivating factor in those adverse actions, is a genuine dispute of a material fact raising an issue for trial. Accordingly, the branch of plaintiff's cross motion seeking summary judgment on her Title VII retaliation claim (second claim for relief) is denied.

ii.      ADEA

In <u>Gross</u>, the Supreme Court eliminated the "mixed-motive analysis" applied to Title VII cases and held that "'a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action' and not just a contributing or motivating factor." <u>Gorzynski</u>, 596 F.3d at 106 (quoting <u>Gross</u>, 129 S.Ct. at 2352).[15]  Pursuant to <u>Gross</u>, "plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action," and the burden of persuasion never "shift[s] to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." <u>Gross</u>, 129 S.Ct. at 2351, 2352.

Plaintiff appears to allege that as a result of her complaints to the NYSDHR: (A) she was removed from her position as a coordinator for the Mentoring Program; and (B) she was "excessed" from her regular teaching position, re-assigned as an ATR, and her regular teaching position was subsequently re-assigned to a less-qualified teacher under the age of forty (40) years.[16]  However, plaintiff was removed from her position in the Mentoring Program in 2004 and was "excessed" from her regular teaching position at the beginning of the 2004-2005 school year, prior to the filing of her NYSDHR complaints.  Accordingly, as a matter of law, those actions

---

[15]  Although the "but-for" analysis  was rendered in the context of an age discrimination claim, in <u>Gorzynski</u>, the Second Circuit applied the same analysis to retaliation claims under the ADEA. 596 F.3d at 111 ("The analysis for the remainder of the burden-shifting test for the retaliation claims is similar to that of the age discrimination claims.") Accordingly, plaintiff must establish that but for her complaints of age discrimination, the DOE defendants would not have taken the adverse actions of which she complains.

[16]  Plaintiff's "Point II" is entitled "Issues of Law & Undisputed Fact with Respect to [Plaintiff's] Complaint to [NYS]DHR/EEOC on the Basis of Age in Violation of ADEA."  (Plaintiff's Cross-Motion for Summary Judgment Memorandum of Law [Plf. Mem.], p. 12).

were not undertaken in retaliation for plaintiff's filing of the NYSDHR complaints and, thus, so much of plaintiff's retaliation claims as are based on those allegations are dismissed with prejudice.[17]

To the extent plaintiff alleges that she was given an unsatisfactory performance rating in June 2005 in retaliation for her NYSDHR complaints, she raises no such allegation in her amended complaint and, therefore, she cannot proceed on this claim.[18]

Moreover, given Lawson's findings: (1) that plaintiff was guilty of filing a false police report against Resnick and of six (6) of the other disciplinary charges initiated against plaintiff relating, *inter alia*, to incompetence, insubordination, defiance, unprofessionalism and misconduct; and (2) that plaintiff was removed from the Mentoring Program for her failure to perform her responsibilities as a coordinator, which findings, as stated above, are entitled to preclusive effect, as a matter of law plaintiff cannot establish that but for her complaints of age discrimination, the DOE defendants would not have initiated disciplinary charges against her, assigned her to the TRC based upon those charges or removed her from the Mentoring Program. Accordingly, so much of plaintiff's ADEA retaliation claim as is based upon those allegations is dismissed with prejudice.  See, e.g. Alleva v. New York City Department of Investigation, ___ F.Supp.2d ___, 2010 WL 935363 (E.D.N.Y. Mar. 12, 2010) (finding that the plaintiff could not prove that his age was the "but-for" cause of his termination since he admitted to multiple

_____

[17]  I make no determination at this time as to whether the "excessing" of plaintiff's regular teaching position and her reassignment to an ATR position were undertaken in retaliation for any informal complaints plaintiff may have made regarding purported age discrimination prior to those acts or were discriminatory.

[18]  Plaintiff does not seek leave to amend her amended complaint to assert this allegation and, for the reasons previously stated, I decline to grant her leave to amend at this late stage in the litigation.

violations of his employer's policies and procedures and his termination followed shortly thereafter).

In addition, to the extent plaintiff's ADEA retaliation claim is based upon her allegation that the DOE's defendants harassed her during the 2004-2005 school year, as a matter of law she cannot establish that she would not have been harassed but for her complaints of age discrimination, since she specifically alleges that the harassment was the result of her complaints about inappropriate sexual behavior between another teacher and a student. (Compl., ¶ 6). Accordingly, so much of plaintiff's ADEA retaliation claim as is based upon that allegation is likewise dismissed with prejudice.

Thus, plaintiff may only proceed with her ADEA retaliation claim to the extent that claim is based upon her allegations: (A) that she was excessed from her regular teaching position and assigned as an ATR; and (B) that she was denied a medical accommodation in May 2005. Whether retaliation for plaintiff's complaints of age discrimination was the "but for" cause for either of those alleged adverse employment actions is a disputed material fact raising an issue for trial. Accordingly, the branch of plaintiff's cross motion seeking summary judgment on her ADEA retaliation claim (first claim for relief) is denied.

b.      Discrimination Claims

To establish a prima facie claim of employment discrimination under Title VII and the ADEA, a plaintiff must demonstrate: (1) that he or she belonged to a protected class (or was within the protected age group); (2) that he or she was otherwise qualified for the position; (3) that he or she suffered an adverse employment action; and (4) that "the adverse action occurred

under circumstances giving rise to an inference of discrimination." Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009) (Title VII); Gorzynski, 596 F.3d at 107 (ADEA). As with retaliation claims, the burden of establishing a prima face discrimination claim is minimal. Mandell v. County of Suffolk, 316 F.3d 368, 378 (2d Cir. 2003).

Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817; Leibowitz, 584 F.3d at 498-499, 503. If the defendant satisfies its burden, the plaintiff must establish by competent evidence that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination. McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. 1817; Leibowitz, 584 F.3d at 499, 504; Davey v. Jones, No. 09-0262-cv, 2010 WL 1172526, at * 1 (2d Cir. Mar. 29, 2010).[19] "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Leibowitz, 584 F.3d at 499 (quoting Patterson v. County of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004)); Davey, 2010 WL 1172526, at * 1 (accord).

i.    Prima Facie Claim

For purposes of this motion, the first three (3) elements are assumed. Contrary to plaintiff's contention, there is no direct evidence of discrimination based upon her race (or age). Nonetheless, plaintiff has established a prima face claim of discrimination under based upon her allegations, *inter alia*, that her regular teaching position, from which she had been "excessed,"

---

[19] As with plaintiff's retaliation claims, this same burden-shifting analysis is applicable to plaintiff's ADEA claims, except to the extent modified by Gross.

was reassigned during the same school year to a younger teacher, under the age of forty (40) years, who was not African-American; and that she was disciplined for singing a "Black pride" song during an economics class[20]. "[A]n inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: 'the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" Leibowitz, 584 F.3d at 502 (quoting Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994)).

ii.    Non-discriminatory Reason

Although Lawson's substantiation of the disciplinary charge against plaintiff relating, in part, to her singing of the "Black pride" song during an economics class does not preclude a finding that the charge was initiated against plaintiff for a discriminatory purpose, it does evidence a legitimate, nondiscriminatory reason for the conduct alleged in the complaint, i.e., that plaintiff was brought up on charges based upon her incompetence and failure to render a satisfactory lesson. Defendants have also proffered non-discriminatory reasons for the

---

[20]   Although Lawson sustained this charge in his decision, he made no finding with respect to the motivation behind the bringing of that charge. Accordingly, Lawson's finding that plaintiff was incompetent and was guilty of rendering an unsatisfactory lesson during that class does not preclude a finding that in lodging that charge (specification 11) against plaintiff, Resnick was motivated in part by racial animus. To the extent plaintiff asserts a wrongful discharge claim, that claim has been dismissed, for the reasons set forth above, based upon her failure to exhaust her administrative remedies.

"excessing" of plaintiff's regular teaching position, i.e., insufficient student enrollment. (See Compl., ¶ 22, 26-7). The issue of whether those reasons are pretextual, or whether racial discrimination was a motivating factor for those adverse actions, raises disputed material facts requiring trial. Accordingly, the branch of plaintiff's cross motion seeking summary judgment on her Title VII discrimination claim (second claim for relief) is denied.[21]

### 3. Hostile Work Environment Claims

Title VII and ADEA hostile work environment claims require a showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Gorzynski, 596 F.3d at 102 (internal quotations and citations omitted); see also Kaytor v. Electric Boat Corp., ___ F.3d ___, 2010 WL 2593500, at * 9 (2d Cir. June 29, 2010); McGullam v. Cedar Graphics, Inc., ___ F.3d ___, 2010 WL 2366026, at * 7 (2d Cir. June 15, 2010). "A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it." Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999); see also Kaytor, 2010 WL 2593500, at * 10; McGullam, 2010 WL 2366026, at * 7; Gorzynski, 596 F.3d at 102 (holding that a plaintiff must show not only that she subjectively perceived the work environment to be abusive, but also that the work environment was objectively hostile and abusive).

In order to support a hostile work environment claim, the "incidents must be more than

---

[21] To the extent plaintiff bases her ADEA discrimination claim on the excessing of her regular teaching position, the issue of whether age discrimination was the "but-for" cause of that adverse action also raises a disputed material fact requiring trial.

episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."

Gorzynski, 596 F.3d at 102.  In determining whether a plaintiff has established a hostile work

environment claim, the court must look to the totality of circumstances.  Kaytor, 2010 WL

2593500, at * 9; McGullam, 2010 WL 2366026, at * 7; Gorzynski, 596 F.3d at 102.  Factors that

the court should consider in making its hostile work environment determination include "the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126

L.Ed.2d 295 (1993).  However, "no single factor is required."  Id.; see also Kaytor, 2010 WL

2593500, at * 9.

    A plaintiff alleging a hostile work environment claim must also establish that "the

conduct at issue was not merely tinged with offensive connotations, but actually constituted

*discrimination* because of [a protected category]."  Oncale v. Sundower Offshore Services, Inc.,

523 U.S. 75, 80-81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)(emphasis in original)(internal

quotations and citations omitted); see also Kaytor, 2010 WL 2593500, at * 10 ("It is axiomatic

that to prevail on a claim of hostile work environment * * *, the plaintiff must establish that the

abuse was based on [a protected category].")

    Even assuming, *arguendo*, that plaintiff has demonstrated that the conduct of which she

complains during the 2004-2005 school year was sufficiently severe or pervasive so as to support

a hostile work environment claim, plaintiff has not demonstrated that as a matter of law, the

behavior at issue was based on racial or age discrimination.  Accordingly, the branch of

plaintiff's cross motion seeking summary judgment on her ADEA and Title VII hostile work

environment claims (first and second claims for relief, respectively) is denied.

III.     Conclusion

    For the reasons stated herein, the branches of the DOE defendants' motion seeking

dismissal of plaintiff's FLSA, NLRA, NYSHRL, NYCHRL and remaining Section 1983 due

process claims are granted and those claims (fourth, sixth, seventh and parts of fifth and eighth

claims for relief, respectively) are dismissed in their entirety with prejudice; the branches of the

DOE defendants' motion seeking dismissal of plaintiff's ADEA and Title VII claims pursuant to

Rule 12(b)(6) are granted to the extent that plaintiff's ADEA and Title VII claims (first, second

and parts of fifth claims for relief) based upon conduct occurring in and after January 2007 are

dismissed with prejudice for failure to exhaust administrative remedies and/or as barred by the

doctrine of collateral estoppel, and those branches of the DOE defendants' motion are otherwise

denied; the branch of the DOE defendants' motion seeking dismissal of plaintiff's Section 1983

claim on the basis of collateral estoppel is granted to the extent that plaintiff's Section 1983

claims based upon the substance of the disciplinary charges sustained against her, her dismissal

from the Mentoring Program, Taveras's investigation of the October incident, Taveras's finding

of her guilt for filing a false police report, her four (4) month suspension without pay and the

procedures employed during the Section 3020-a hearing are dismissed with prejudice as barred

by the doctrine of collateral estoppel, and that branch of the DOE defendants' motion is

otherwise denied; the branch of the DOE defendants' motion seeking dismissal of plaintiff's

Monell claim against the DOE is granted and that claim is dismissed with prejudice except to the

extent that the Monell claim is based upon the DOE's assignment of teachers to the TRC pending

resolution of disciplinary charges brought against them; plaintiff's remaining Section 1983 equal

protection claims are dismissed in their entirety, except to the extent based upon the "excessing"

of plaintiff's regular teaching position and her reassignment as an ATR; and the DOE defendants'

motion is otherwise denied. Plaintiff's cross motion for summary judgment is denied in its

entirety.[22]


SO ORDERED.

___/s/_____
SANDRA J. FEUERSTEIN
United States District Judge


Dated: July 15, 2010
        Central Islip, N.Y.


---

[22] In light of this determination, the DOE defendants' pending motion in limine is denied as moot.